# EXHIBIT 5 – Part 5

a certificate of insurance for such Insurance Policy. Each Mortgage requires that the related Mortgaged Property and all improvements thereon are covered by Insurance Policies providing (a) coverage in the amount of the lesser of full replacement cost of such Mortgaged Property and the outstanding principal balance of the related Mortgage Loan (subject to customary deductibles) for losses sustained by fire and against loss or damage by other risks and hazards covered by a standard extended coverage insurance policy providing "special" form coverage in an amount sufficient to prevent the Mortgagor from being deemed a co-insurer and to provide coverage on a full replacement cost basis of such Mortgaged Property (in some cases exclusive of excavations, underground utilities, foundations and footings) with an agreed amount endorsement to avoid application of any coinsurance provision; such policies contain a standard mortgage clause naming mortgagee and its successor in interest as additional insureds or loss payee, as applicable; (b) business interruption or rental loss insurance in an amount at least equal to (i) 12 months of operations or (ii) in some cases all rents and other amounts customarily insured under this type of insurance of the Mortgaged Property; (c) flood insurance (if any portion of the improvements on the Mortgaged Property is located in an area identified by the Federal Emergency Management Agency ("FEMA"), with respect to certain Mortgage Loans and the Secretary of Housing and Urban Development with respect to other Mortgage Loans, as having special flood hazards) in an amount not less than amounts prescribed by FEMA; (d) workers' compensation, if required by law; (e) comprehensive general liability insurance in an amount consistent with the standard utilized by the Seller with respect to loans it holds for its own account, but not less than $1 million; all such Insurance Policies contain clauses providing they are not terminable and may not be terminated without thirty (30) days prior written notice to the mortgagee (except where applicable law requires a shorter period or except for nonpayment of premiums, in which case not less than ten (10) days prior written notice to the mortgagee is required). In addition, each Mortgage permits the related mortgagee to make premium payments to prevent the cancellation thereof and shall entitle such mortgagee to reimbursement therefor. Any insurance proceeds in respect of a casualty loss or taking will be applied either to the repair or restoration of all or part of the related Mortgaged Property or the payment of the outstanding principal balance of the related Mortgage Loan together with any accrued interest thereon. The related Mortgaged Property is insured by an Insurance Policy, issued by an insurer meeting the requirements of such Mortgage Loan and having a claims-paying or financial strength rating of at least "A-:V" from A.M. Best Company or "A-" (or the equivalent) from Standard & Poor's Ratings Services, Fitch, Inc. or Moody's Investors Service, Inc. An architectural or engineering consultant has performed an analysis of each of the Mortgaged Properties located in seismic zones 3 or 4 in order to evaluate the structural and seismic condition of such property, for the sole purpose of assessing the probable maximum loss ("PML") for the Mortgaged Property in the event of an earthquake. In such instance, the PML was based on a return period of not less than 100 years, an exposure period of 50 years and a 10% probability of exceedence. If the resulting report concluded that the PML would exceed 20% of the amount of the replacement costs of the improvements, earthquake insurance on such Mortgaged Property was obtained by an insurer rated at least "A-:V" by A.M. Best Company or "A-" (or the equivalent) from Standard & Poor's Ratings Services, Fitch, Inc. or Moody's Investors Service, Inc. To the Seller's actual knowledge, the insurer issuing each of the foregoing insurance policies is qualified to write insurance in the jurisdiction where the related Mortgaged Property is located.

(23) All amounts required to be deposited by each Mortgagor at origination under the related Mortgage Loan documents have been deposited or have been withheld from the related Mortgage Loan proceeds at origination and there are no deficiencies with regard thereto.

(24) Whether or not a Mortgage Loan was originated by the Seller, to the Seller's knowledge, with respect to each Mortgage Loan originated by the Seller and each Mortgage Loan originated by any Person other than the Seller, as of the date of origination of the related Mortgage Loan, and, to the Seller's actual knowledge, with respect to each Mortgage Loan originated by the Seller and any prior holder of the Mortgage Loan, as of the Closing Date, there are no actions, suits, arbitrations or governmental investigations or proceedings by or before any court or other governmental authority or agency now pending against or affecting the Mortgagor under any Mortgage Loan or any of the Mortgaged Properties which, if determined against such Mortgagor or such Mortgaged Property, would materially and adversely affect the value of such Mortgaged Property, the security intended to be provided with respect to the related Mortgage Loan, or the ability of such Mortgagor and/or the current use of such Mortgaged Property to generate net cash flow to pay principal, interest and other amounts due under the related Mortgage Loan; and to the Seller's actual knowledge there are no such actions, suits or proceedings threatened against such Mortgagor.

(25) The origination practices used by the Seller or, to its knowledge, any prior holder of the related Mortgage Note with respect to such Mortgage Loan have been in all material respects legal and have met customary industry standards and since origination, the Mortgage Loan has been serviced in all material respects in a legal manner in conformance with customary industry standards.

(26) The originator of the Mortgage Loan or the Seller has inspected or caused to be inspected each related Mortgaged Property within the 12 months prior to the Closing Date.

(27) The Mortgage Loan documents require the Mortgagor to provide the holder of the Mortgage Loan with at least annual operating statements, financial statements and except for Mortgage Loans for which the related Mortgaged Property is leased to a single tenant, rent rolls.

(28) All escrow deposits and payments required by the terms of each Mortgage Loan are in the possession, or under the control of the Seller (except to the extent they have been disbursed for their intended purposes), and all amounts required to be deposited by the applicable Mortgagor under the related Mortgage Loan documents have been deposited, and there are no deficiencies with regard thereto (subject to any applicable notice and cure period). All of the Seller's interest in such escrows and deposits will be conveyed by the Seller to the Purchaser hereunder.

(29) No two or more Mortgage Loans representing, in the aggregate, more than 5% of the aggregate outstanding principal amount of all the mortgage loans included in the Trust Fund have the same Mortgagor or, to the Seller's knowledge, are to Mortgagors which are entities controlled by one another or under common control.

(30) Each Mortgagor with respect to a Mortgage Loan with a principal balance as of the Cut-off Date in excess of $15,000,000 included in the Trust Fund is an entity whose organizational documents or related Mortgage Loan documents provide that it is, and at least so long as the Mortgage Loan is outstanding will continue to be, a Single Purpose Entity. For this purpose, "Single Purpose Entity" shall mean a Person, other than an individual, whose organizational documents or related Mortgage Loan documents provide that it shall engage solely in the business of owning and operating the Mortgaged Property and which does not engage in any business unrelated to such property and the financing thereof, does not have any assets other than those related to its interest in the Mortgaged Property or the financing thereof or any

indebtedness other than as permitted by the related Mortgage or the other Mortgage Loan documents, and the organizational documents of which require that it have its own separate books and records and its own accounts, in each case which are separate and apart from the books and records and accounts of any other Person.

(31) The gross proceeds of each Mortgage Loan to the related Mortgagor at origination did not exceed the non-contingent principal amount of the Mortgage Loan and either: (a) such Mortgage Loan is secured by an interest in real property having a fair market value (i) at the date the Mortgage Loan was originated at least equal to 80% of the original principal balance of the Mortgage Loan or (ii) at the Closing Date at least equal to 80% of the original principal balance of the Mortgage Loan on such date; provided that for purposes hereof, the fair market value of the real property interest must first be reduced by (A) the amount of any lien on the real property interest that is senior to the Mortgage Loan and (B) a proportionate amount of any lien that is in parity with the Mortgage Loan (unless such other lien secures a Mortgage Loan that is cross-collateralized with such Mortgage Loan, in which event the computation described in sub-clauses (a)(i) and (a)(ii) of this clause (31) shall be made on a pro rata basis in accordance with the fair market values of the Mortgaged Properties securing such cross-collateralized Mortgage Loan); or (b) substantially all the proceeds of such Mortgage Loan were used to acquire, improve or protect the real property which served as the only security for such Mortgage Loan (other than a recourse feature or other third party credit enhancement within the meaning of Treasury Regulations Section 1.860G-2(a)(1)(ii)). If the Mortgage Loan was "significantly modified" prior to the Closing Date so as to result in a taxable exchange under Section 1001 of the Code, it either (x) was modified as a result of the default or reasonably foreseeable default of such Mortgage Loan or (y) satisfies the provisions of either sub-clause (a)(i) above (substituting the date of the last such modification for the date the Mortgage Loan was originated) or sub-clause (a)(ii), including the proviso thereto. The Mortgage Loan is a "qualified mortgage" within the meaning of Section 860G(a)(3) of the Code (but without regard to the rule in Treasury Regulations Section 1.860G-2(f)(2) that treats certain defective mortgage loans as qualified mortgages). Any prepayment premium and yield maintenance charges applicable to the Mortgage Loan constitute "customary prepayment penalties" within the meaning of Treasury Regulations Section 1.860G-1(b)(2).

(32) Each of the Mortgage Loans contains a "due on sale" clause, which provides for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan if, without the prior written consent of the holder of the Mortgage Loan, the property subject to the Mortgage, or any controlling interest therein, is directly or indirectly transferred or sold (except that it may provide for transfers by devise, descent or operation of law upon the death of a member, manager, general partner or shareholder of a Mortgagor and that it may provide for transfers subject to the Mortgage Loan holder's approval of transferee, transfers of worn out or obsolete furnishings, fixtures, or equipment promptly replaced with property of equivalent value and functionality, transfers of leases entered into in accordance with the Mortgage Loan documents, transfers to affiliates, transfers to family members for estate planning purposes, transfers among existing members, partners or shareholders in Mortgagors or transfers of passive interests so long as the key principals or general partner retains control). The Mortgage Loan documents contain a "due on encumbrance" clause, which provides for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan if the property subject to the Mortgage or any controlling interest in the Mortgagor is further pledged or encumbered, unless the prior written consent of the holder of the Mortgage Loan is obtained (except that it may provide for assignments subject to the Mortgage Loan holder's approval of transferee, transfers to affiliates or transfers of

passive interests so long as the key principals or general partner retains control). The Mortgage or Mortgage Note requires the Mortgagor to pay all reasonable out-of-pocket fees and expenses associated with securing the consent or approval of the holder of the Mortgage for a waiver of a "due on sale" or "due on encumbrance" clause or a defeasance provision. As of the Closing Date, the Seller holds no preferred equity interest in any Mortgagor and the Seller holds no mezzanine debt related to such Mortgaged Property.

(33) Except with respect to the AB Mortgage Loans, each Mortgage Loan is a whole loan and not a participation interest in a mortgage loan.

(34) Each Mortgage Loan containing provisions for defeasance of mortgage collateral provides that: defeasance may not occur any earlier than two years after the Closing Date; and requires or provides (i) the replacement collateral consist of U.S. "government securities," within the meaning of Treasury Regulations Section 1.860 G-2(a)(8)(i), in an amount sufficient to make all scheduled payments under the Mortgage Note when due (up to the maturity date for the related Mortgage Loan, the Anticipated Repayment Date for ARD Loans or the date on which the Mortgagor may prepay the related Mortgage Loan without payment of any prepayment penalty); (ii) the loan may be assumed by a Single Purpose Entity approved by the holder of the Mortgage Loan; (iii) counsel provide an opinion that the trustee has a perfected security interest in such collateral prior to any other claim or interest; and (iv) such other documents and certifications as the mortgagee may reasonably require which may include, without limitation, (A) a certification that the purpose of the defeasance is to facilitate the disposition of the mortgaged real property or any other customary commercial transaction and not to be part of an arrangement to collateralize a REMIC offering with obligations that are not real estate mortgages and (B) a certification from an independent certified public accountant that the collateral is sufficient to make all scheduled payments under the Mortgage Note when due. Each Mortgage Loan containing provisions for defeasance provides that, in addition to any cost associated with defeasance, the related Mortgagor shall pay, as of the date the mortgage collateral is defeased, all scheduled and accrued interest and principal due as well as an amount sufficient to defease in full the Mortgage Loan (except as contemplated in clause (35) hereof). In addition, if the related Mortgage Loan permits defeasance, then the Mortgage Loan documents provide that the related Mortgagor shall (x) pay all reasonable fees associated with the defeasance of the Mortgage Loan and all other reasonable expenses associated with the defeasance, or (y) provide all opinions required under the related Mortgage Loan documents, and in the case of any Mortgage Loan with an outstanding principal balance as of the Cut-off Date of $40,000,000 or greater, (a) a REMIC opinion and (b) rating agency letters confirming that no downgrade or qualification shall occur as a result of the defeasance.

(35) In the event that a Mortgage Loan is secured by more than one Mortgaged Property, then, in connection with a release of less than all of such Mortgaged Properties, a Mortgaged Property may not be released as collateral for the related Mortgage Loan unless, in connection with such release, an amount equal to not less than 125% of the Allocated Loan Amount for such Mortgaged Property is prepaid or, in the case of a defeasance, an amount equal to not less than 125% of the Allocated Loan Amount is defeased through the deposit of replacement collateral (as contemplated in clause (34) hereof) sufficient to make all scheduled payments with respect to such defeased amount, or such release is otherwise in accordance with the terms of the Mortgage Loan documents.

(36) Each Mortgaged Property is owned by the related Mortgagor, except for Mortgaged Properties which are secured in whole or in a part by a Ground Lease and for out-parcels, and is used and occupied for commercial or

multifamily residential purposes in accordance with applicable law.

(37) Any material non-conformity with applicable zoning laws constitutes a legal non-conforming use or structure which, in the event of casualty or destruction, may be restored or repaired to the full extent of the use or structure at the time of such casualty, or for which law and ordinance insurance coverage has been obtained in amounts consistent with the standards utilized by the Seller.

(38) Neither the Seller nor any affiliate thereof has any obligation to make any capital contributions to the related Mortgagor under the Mortgage Loan. The Mortgage Loan was not originated for the sole purpose of financing the construction of incomplete improvements on the related Mortgaged Property.

(39) No court of competent jurisdiction will determine in a final decree that fraud with respect to the Mortgage Loans has taken place on the part of the Seller or, to the Seller's actual knowledge, on the part of any originator, in connection with the origination of such Mortgage Loan.

(40) If the related Mortgage or other Mortgage Loan documents provide for a grace period for delinquent Monthly Payments, such grace period is no longer than ten (10) days from the applicable payment date or, with respect to acceleration or the commencement of the accrual of default interest under any Mortgage Loan, five (5) days after notice to the Mortgagor of default.

(41) The following statements are true with respect to the related Mortgaged Property: (a) the Mortgaged Property is located on or adjacent to a dedicated road or has access to an irrevocable easement permitting ingress and egress and (b) the Mortgaged Property is served by public or private utilities, water and sewer (or septic facilities) appropriate for the use in which the Mortgaged Property is currently being utilized.

(42) None of the Mortgage Loan documents contain any provision that expressly excuses the related borrower from obtaining and maintaining insurance coverage for acts of terrorism or, in circumstances where terrorism insurance is not expressly required, the mortgagee is not prohibited from requesting that the related borrower maintain such insurance, in each case, to the extent such insurance coverage is generally available for like properties in such jurisdictions at commercially reasonable rates. Each Mortgaged Property is insured by a "standard extended coverage" casualty insurance policy that does not contain an express exclusion for (or, alternatively, is covered by a separate policy that insures against property damage resulting from) acts of terrorism.

(43) An appraisal of the related Mortgaged Property was conducted in connection with the origination of such Mortgage Loan, and such appraisal satisfied the guidelines in Title XI of the Financial Institutions Reform, Recovery and Enforcement Act of 1989, as in effect on the date such Mortgage Loan was originated.

(44) Each Mortgaged Property is, and is required pursuant to the related Mortgage to be, insured by (a) a fire and extended perils insurance policy providing coverage against loss or damage sustained by reason of fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke, and, (b) to the extent required as of the date of origination by the originator of such Mortgage Loan consistent with its capital markets conduit lending practices, against other risks insured against by persons operating like properties in the locality of the Mortgaged Property, in each case in an amount not less than the lesser of the principal balance of the related Mortgage Loan and the replacement cost of the

improvements located at the Mortgaged Property, and not less than the amount necessary to avoid the operation of any co-insurance provisions with respect to the Mortgaged Property, and the policy contains no provisions for a deduction for depreciation.

Defined Terms:

The term "Allocated Loan Amount" shall mean, for each Mortgaged Property, the portion of principal of the related Mortgage Loan allocated to such Mortgaged Property for certain purposes (including determining the release prices of properties, if permitted) under such Mortgage Loan as set forth in the related loan documents. There can be no assurance, and it is unlikely, that the Allocated Loan Amounts represent the current values of individual Mortgaged Properties, the price at which an individual Mortgaged Property could be sold in the future to a willing buyer or the replacement cost of the Mortgaged Properties.

The term "Anticipated Repayment Date" shall mean the date on which all or substantially all of any Excess Cash Flow is required to be applied toward prepayment of the related Mortgage Loan and on which any such Mortgage Loan begins accruing Excess Interest.

The term "ARD Loan" shall have the meaning assigned thereto in the Pooling and Servicing Agreement.

The term "Environmental Site Assessment" shall mean a Phase I environmental report meeting the requirements of the American Society for Testing and Materials, and, if in accordance with customary industry standards a reasonable lender would require it, a Phase II environmental report, each prepared by a licensed third party professional experienced in environmental matters.

The term "Excess Cash Flow" shall mean the cash flow from the Mortgaged Property securing an ARD Loan after payments of interest (at the Mortgage Interest Rate) and principal (based on the amortization schedule), and (a) required payments for the tax and insurance fund and ground lease escrows fund, (b) required payments for the monthly debt service escrows, if any, (c) payments to any other required escrow funds and (d) payment of operating expenses pursuant to the terms of an annual budget approved by the applicable Master Servicer and discretionary (lender approved) capital expenditures.

The term "Excess Interest" shall mean any accrued and deferred interest on an ARD Loan in accordance with the following terms. Commencing on the respective Anticipated Repayment Date each ARD Loan (pursuant to its existing terms or a unilateral option, as defined in Treasury Regulations under Section 1001 of the Code, in the Mortgage Loans exercisable during the term of the Mortgage Loan) generally will bear interest at a fixed rate (the "Revised Rate") per annum equal to the Mortgage Interest Rate plus a percentage specified in the related Mortgage Loan documents. Until the principal balance of each such Mortgage Loan has been reduced to zero (pursuant to its existing terms or a unilateral option, as defined in Treasury Regulations under Section 1001 of the Code, in the Mortgage Loans exercisable during the term of the Mortgage Loan), such Mortgage Loan will only be required to pay interest at the Mortgage Interest Rate and the interest accrued at the excess of the related Revised Rate over the related Mortgage Interest Rate will be deferred (such accrued and deferred interest and interest thereon, if any, is "Excess Interest").

The term "in reliance on" shall mean that:

(a) the Seller has examined and relied in whole or in part upon

one or more of the specified documents or other information in connection with a given representation or warranty;

    (b) that the information contained in such document or otherwise obtained by the Seller appears on its face to be consistent in all material respects with the substance of such representation or warranty;

    (c) the Seller's reliance on such document or other information is consistent with the standard of care exercised by prudent lending institutions originating commercial mortgage loans; and

    (d) although the Seller is under no obligation to verify independently the information contained in any document specified as being relied upon by it, the Seller believes the information contained therein to be true, accurate and complete in all material respects and has no actual knowledge of any facts or circumstances which would render reliance thereon unjustified without further inquiry.

The term "Mortgage Interest Rate" shall mean the fixed rate of interest per annum that each Mortgage Loan bears as of the Cut-off Date.

The term "Permitted Encumbrances" shall mean:

    (a) the lien of current real property taxes, water charges, sewer rents and assessments not yet delinquent or accruing interest or penalties;

    (b) covenants, conditions and restrictions, rights of way, easements and other matters of public record acceptable to mortgage lending institutions generally and referred to in the related mortgagee's title insurance policy;

    (c) other matters to which like properties are commonly subject, and

    (d) the rights of tenants, as tenants only, whether under ground leases or space leases at the Mortgaged Property.

which together do not materially and adversely affect the related Mortgagor's ability to timely make payments on the related Mortgage Loan, which do not materially interfere with the benefits of the security intended to be provided by the related Mortgage or the use, for the use currently being made, the operation as currently being operated, enjoyment, value or marketability of such Mortgaged Property, provided, however, that, for the avoidance of doubt, Permitted Encumbrances shall exclude all pari passu, second, junior and subordinated mortgages but shall not exclude mortgages that secure other Mortgage Loans or Companion Loans that are cross-collateralized with the related Mortgage Loan.

Other. For purposes of these representations and warranties, the term "to the Seller's knowledge" shall mean that no officer, employee or agent of the Seller responsible for the underwriting, origination or sale of the Mortgage Loans or of any servicer responsible for servicing the Mortgage Loan on behalf of the Seller, believes that a given representation or warranty is not true or is inaccurate based upon the Seller's reasonable inquiry and during the course of such inquiry, no such officer, employee or agent of the Seller has obtained any actual knowledge of any facts or circumstances that would cause such person to believe that such representation or warranty was inaccurate. Furthermore, all information contained in documents which are part of or required to be part of a

Mortgage File shall be deemed to be within the Seller's knowledge. For purposes of these representations and warranties, the term "to the Seller's actual knowledge" shall mean that an officer, employee or agent of the Seller responsible for the underwriting, origination and sale of the Mortgage Loans does not actually know of any facts or circumstances that would cause such person to believe that such representation or warranty was inaccurate.

<PAGE>

EXHIBIT C

JPMCC 2007-LDP10

<TABLE>
<CAPTION>
EXCEPTIONS TO MORTGAGE LOAN REPRESENTATIONS AND

No. 5

| Loan No. | Loan Name | Description of Exception |
|----------|-----------|--------------------------|
| <S> | <C> | <C> |
| 22 | Outrigger Guam Resort | The Mortgagor is a limited liability c of the Territory of Guam. |

No. 6

| Loan No. | Loan Name | Description of Exception |
|----------|-----------|--------------------------|
| 98 | Northwest Michigan Surgery Center | Munson Healthcare ("Munson"), a parent a right of first refusal, (ii) a purch first offer, with respect to a certain Property, each of which rights of Muns However, the mortgagee's interests are agreement among Munson, the Mortgagor, that the Mortgage Loan will be assumed exercised or, if the Mortgage Loan is foreclose on Mortgage. |

No. 10(a)

| Loan No. | Loan Name | Description of Exception |
|----------|-----------|--------------------------|
| 21 | Franklin Tower | No individual or entity other than the actual losses, liabilities, costs and non-recourse carve out provisions. |
| 28 | 90 Broad Street | No individual or entity other than the actual losses, liabilities, costs and non-recourse carve out provisions. |

| Loan No. | Loan Name | Description of Exception |
|---|---|---|
| 31 | 1515 Market Street | The environmental indemnification agre $10 million environmental insurance po |
| 56 | Fair Oaks Plaza | No individual or entity other than the actual losses, liabilities, costs and non-recourse carve out provisions. |
| 80 | South Bay Marketplace | No individual or entity other than the actual losses, liabilities, costs and non-recourse carve out provisions. |
| 137 | 180-190 O'Farrell Street | The Mortgage Loan is full recourse to |
| 194 | Walgreens - Dallas | No individual or entity other than the actual losses, liabilities, costs and of the related environmental covenants |

No. 12

| Loan No. | Loan Name | Description of Exception |
|---|---|---|
| 29 | 90-100 Trinity Place | The Mortgagor may obtain the release o Property from the lien of the Mortgage equal to 110% of the Allocated Loan Am |
| 32 | Americold Pool 1 | The Mortgagor may obtain the release o Property from the lien of the Mortgage equal to: (A) 105% of the Allocated Lo Mortgaged Property until 12.5% of the prepaid; (B) 110% of the Allocated Loa Mortgaged Property until 25% of the or been prepaid; and (C) 115% of the Allo individual Mortgaged Property, thereaf |
| 57 | Sawyer Portfolio | The Mortgagor may obtain the release o Property from the lien of the Mortgage equal to 115% of the Allocated Loan Am |
| 71 | Demattia Portfolio | The Mortgagor may obtain the release o Property from the lien of the Mortgage equal to 115% of the Allocated Loan Am |
| 105 | Walgreens Hermilin Portfolio III | The Mortgagor may obtain the release o Property from the lien of the Mortgage equal to 110% of the Allocated Loan Am |
| 119 | Walgreens Hermilin Portfolio II | The Mortgagor may obtain the release o Property from the lien of the Mortgage equal to 110% of the Allocated Loan Am |
| 128 | Walgreens Hermilin Portfolio I | The Mortgagor may obtain the release o Property from the lien of the Mortgage equal to 110% of the Allocated Loan Am |
| 162 | Franklin Avenue & Whitney Avenue | The Mortgagor may obtain the release o Property from the lien of the Mortgage equal to 120% of the Allocated Loan Am |

```
  201               Rite Aid Portfolio 1       The Mortgagor may obtain the release o
                                                Property from the lien of the Mortgage
                                                equal to 105% of the Allocated Loan Am

No. 16

Loan No.          Loan Name                     Description of Exception
--------          ---------                     ------------------------

  70              Hall Street                   The most recent certificate of occupan
                                                was issued in 1962 which states that t
                                                is legal conforming.  City records do
                                                which have been submitted for the Mort
                                                not aware of any modifications to the
                                                the zoning code which would apply to t

No. 17

Loan No.          Loan Name                     Description of Exception
--------          ---------                     ------------------------

  136             K-Mart Henderson, NV          The Mortgaged Property was subdivided
                                                and, as of the origination date, a sep
                                                assigned to the Mortgaged Property.  H
                                                documents require the Mortgagor to: (i
                                                number (which will be issued upon the
                                                Property); (ii) deliver a confirmation
                                                constitutes one or more separate and c
                                                cause the title insurer to add a tax p
                                                existing title insurance policy; provi
                                                requirements (i) through (iii) are not
                                                Mortgagor will be required to (A) depo
                                                due on the Mortgaged Property or (y) t
                                                parcels, as of the date immediately su
                                                provide evidence that no outstanding t
                                                Property.  Any tax lien on the Mortgag
                                                parcels that remains uncured for more
                                                event of default.  The guarantor has a
                                                for any losses in connection with the
                                                a complete and separate tax parcel.

No. 20

Loan No.          Loan Name                     Description of Exception
--------          ---------                     ------------------------

  97              Jericho Office Park           The portion of the Mortgaged Property
                                                is subject to a Ground Lease which wil
                                                The Ground Lease will expire approxima
                                                date (February 9, 2017) of the Mortgag
                                                has entered into a springing easement
                                                the Mortgagor for parking on an adjace
                                                that the Ground Lease is not extended.
                                                portion contains 120 parking spaces, a
                                                agreement would create replacement par

No. 22
```

| Loan No. | Loan Name | Description of Exception |
| --- | --- | --- |
| 21 | Franklin Tower | All insurance polices are required to insurers having a claims-paying-abilit strength rating of not less than "A-" the rating agencies acceptable to lend discretion; provided, however, that (A insurance coverage may be issued by on claims-paying-ability rating by each o less than "BBB-" or its equivalent fro a "cut-through" endorsement from an in satisfies the claims-paying-ability ra will be permitted in lieu thereof; and insurance from an insurer whose parent interest in such insurance company) sa requirements subject to rating agency among other things, a parent guaranty) |
| 23 | Long Island Marriott and Conference Center | All insurance policies are required to claims-paying-ability rating of "A-" o equivalent from one of the other ratin Company, (ii) Ariel Reinsurance Co. Lt MaxRe Ltd, who may provide insurance c that CHUBB has been pre-approved as an |
| 28 | 90 Broad Street | All insurance policies are required to primary insurers that have a claims-pa "A" or better by S&P and Fitch and an rating of "A2" by Moody's; provided, t be permitted: (i) a syndicate of insur of the coverage (if there are four or (ii) at least 60% of the coverage (if the syndicate) is with carriers having ratings (provided that, all such carri claims-paying-ability ratings of not l equivalent), or (iii) any other insure approval of lender, in its reasonable confirmation. |
| 32 | Americold Pool 1 | All insurance policies may be issued b claims-paying-ability rating of less t satisfaction of certain conditions inc following: (A) if 5 or more insurance insurance policies (i) only 60% of suc be insured by insurance companies havi rating of "A-" or better by S&P, (ii) coverage may be provided by insurance rating of "BBB-" or better by S&P, and $100,000,000 of such coverage, not mor have a claims-paying-ability rating lo event lower than "BBB" by S&P); and (B carriers are providing the policies, 7 provided by insurance companies having of "A-" or better by S&P, with the rem insurance companies having a claims-pa better by S&P. |

| | | |
|---|---|---|
| 80 | South Bay Marketplace | The Mortgage Loan documents provide th contain such provisions as the lender including provisions requiring written days prior to any modification, reduct insurance policy. |
| 105 | Walgreens Hermilin Portfolio III | The Mortgaged Property is self-insured accordance with the requirements set f agreement. However, if the tenant vaca required to provide insurance coverage agencies in accordance with the relate |
| 136 | K-Mart Henderson, NV | The Mortgaged Property is self-insured accordance with the requirements set f agreement. However, if the tenant vac Mortgagor is required to provide insur the lender and the rating agencies in Mortgage Loan documents. |

No. 27

| Loan No. | Loan Name | Description of Exception |
|---|---|---|
| 32 | Americold Pool 1 | No rent rolls are required because the Mortgaged Properties are warehouses su not leases. |

No. 32

| Loan No. | Loan Name | Description of Exception |
|---|---|---|
| 21 | Franklin Tower | The Mortgagor must at all times be con by an entity controlled by Shorenstein sole member of the Mortgagor; provided indirect beneficial interests of the M Property may be made to a (A)(i)  pens (iii) pension account that immediately (x) owns, directly or indirectly, tota least $750,000,000 and (y) owns or ope business district ("CBD") or suburban less than 3,000,000 square feet (exclu (B)  pension fund advisor who (i)  imme controls, directly or indirectly, at l real estate assets, (ii) owns or opera office properties totaling no less tha (exclusive of the Mortgaged Property) one or more pension funds that, in the requirements of clause (A) above. |
| 23 | Long Island Marriott and Conference Center | The Mortgagor's direct or indirect int pledged without the prior consent of t of any related fees and/or expenses; p guarantor, (i) retains control of each Mortgagor subject to certain investor interests in at least 10% of the Rex N beneficial interests in at least 25% o |

| | | |
|---|---|---|
| | | permitted mezzanine borrower, and (iii be transferred to Charles Wang (or 100 purchases the remaining indirect inter |
| 28 | 90 Broad Street | The Mortgage Loan documents permit (i) its direct or indirect interests in th purpose equityholder (if applicable) t Equityholders (including the other spo controlled subsidiary thereof), (ii) a indirect interest in any sponsor or an (iii) any transfer wherein the Mortgag equityholder (if applicable) continue Qualified Equityholders (individually transfer of any direct or indirect int "Qualified Equityholder" means (a) eac successors by merger or acquisition, ( investment fund managed or advised by Morgan Investment Management, Inc. ("J subsidiary of J.P. Morgan Chase & Co. merger or acquisition) if such fund ha million and capital/statutory surplus excess of $200 million (in both cases, Property), (c) a bank, saving and loan insurance company, trust company, comm pension plan, pension fund or pension government entity or plan, real estate institution substantially similar to a in each case, under this clause (c) th has total assets (in name or under man and (except with respect to a pension fiduciary) capital or statutory surplu excess of $500 million (in both cases, Property) and (y) such individual or e the business of owning office properti (d) any other individual or entity wit agency confirmation is received, (e) a any opportunity funds) regularly engag mezzanine loans which has been approve a "qualified transferee" under S&P's f and/or (f) an affiliate of a Qualified |
| 29 | 90-100 Trinity Place | Meyer Chetrit, a sponsor and a guarant his direct and/or indirect ownership i Jacob Chetrit and Joseph Chetrit witho the mortgagee; provided that, (A) Meye directly or indirectly, at least 10% l the (i) Mortgagor, (ii) any affiliate Properties and (B) controls the day-to and the Mortgaged Properties. |
| 31 | 1515 Market Street | The beneficial interests of 1515 Marke transferred to (A) Dillon Reade, a UBS (C) any affiliate entity of Dillon Rea prior written consent of the mortgagee LP is a sponsor of the Mortgagor who, ownership interests of the Mortgagor. |
| 32 | Americold Pool 1 | The related Mortgage Loan documents pe are owners of Americold Realty Trust ( of the Mortgagor, to transfer their ow |

| | | |
|---|---|---|
| | | other persons, (ii) ART to issue owner ART in connection with ART becoming a merge or consolidate with any person; with (ii) and (iii), if the existing o would no longer own a controlling inte agency confirmation will be required i |
| 58 | Fair Oaks Plaza | The Mortgage Loan documents permit the interests of the Mortgagor without the mortgagee in connection with (A) the c Group, Inc. ("TPG"), a sponsor, to a r "REIT"); (B) the issuance, sale, or pl securities or (y) the REIT shares or s consolidation of the TPG/CalSTRS, LLC |

No. 35

| Loan No. | Loan Name | Description of Exception |
|---|---|---|
| 29 | 90-100 Trinity Place | Same as exception to No. 12. |
| 32 | Americold Pool 1 | Same as exception to No. 12. |
| 57 | Sawyer Portfolio | Same as exception to No. 12. |
| 71 | Demattia Portfolio | Same as exception to No. 12. |
| 105 | Walgreens Hermilin Portfolio III | Same as exception to No. 12. |
| 119 | Walgreens Hermilin Portfolio II | Same as exception to No. 12. |
| 128 | Walgreens Hermilin Portfolio I | Same as exception to No. 12. |
| 162 | Franklin Avenue & Whitney Avenue | Same as exception to No. 12. |
| 174 | Rite Aid Portfolio 1 | Same as exception to No. 12. |

No. 37

| Loan No. | Loan Name | Description of Exception |
|---|---|---|
| 70 | Hall Street | Same as exception to No. 16. |

No. 42

| Loan No. | Loan Name | Description of Exception |
|---|---|---|
| 21 | Franklin Tower | If the Terrorism Risk Insurance Act of longer in effect, the Mortgagor will n than two times the current aggregate p payable with respect to (or otherwise |

| | | Property. |
|---|---|---|
| 23 | Long Island Marriott and Conference Center | Terrorism insurance is required only t such coverage do not exceed 150% (afte current cost of the stand-alone terror |
| 28 | 90 Broad Street | Terrorism insurance is required only t such coverage do not exceed $120,000; insurance will only be required to the exceed $255,000 (A) if JPMorgan Chase Investment Management, Inc. ("JPM") or holds direct or indirect beneficial in Property or (B) if the Mortgaged Prope insurance policy in effect as of the o be renewed or replaced in accordance w the Mortgage Loan documents). |
| 32 | Americold Pool 1 | Terrorism insurance is required to the coverage do not exceed the sum of the individual Mortgaged Property with the Loan Amount (including the required 12 coverage) and $76,867 (which represent aggregate amount of the $250,000 appli Portfolio Mortgage Loans). The current Portfolio Mortgage Loan is $43,800. |
| 124 | Sage Brook Apartments - Las Vegas, NV | Terrorism insurance is required only t coverage do not exceed $68,202 (i.e., premium amount), adjusted for inflatio |
| 174 | Rite Aid Portfolio I | Terrorism insurance is only required t coverage do not exceed twice the annua |
| 190 | Rite Aid Portfolio II | Terrorism insurance is only required t coverage do not exceed twice the annua |
| 201 | Rite Aid Portfolio III | Terrorism insurance is only required t coverage do not exceed twice the annua |

No. 44

| Loan No. | Loan Name | Description of Exception |
|---|---|---|
| 23 | Long Island Marriott and Conference Center | The Mortgaged Property is insured unde Marriott Services Inc. pursuant to the which was approved by the mortgagee. |

</TABLE>

<PAGE>

EXHIBIT D

FORM OF OFFICER'S CERTIFICATE

I, [_____], a duly appointed, qualified and acting [_____] of

[_____], a [_____] [_____] (the "Company"), hereby certify on behalf of the Company as follows:

        1. I have examined the Mortgage Loan Purchase Agreement, dated as of March 1, 2007 (the "Agreement"), between the Company and J.P. Morgan Chase Commercial Mortgage Securities Corp., and all of the representations and warranties of the Company under the Agreement are true and correct in all material respects on and as of the date hereof (or, in the case of any particular representation or warranty set forth on Exhibit B to the Agreement, as of such other date provided for in such representation or warranty) with the same force and effect as if made on and as of the date hereof, subject to the exceptions set forth in the Agreement (including Exhibit C thereto).

        2. The Company has complied with all the covenants and satisfied all the conditions on its part to be performed or satisfied under the Agreement on or prior to the date hereof and no event has occurred which, with notice or the passage of time or both, would constitute a default under the Agreement.

        3. I have examined the information regarding the Mortgage Loans in the Prospectus, dated March 9, 2007, as supplemented by the Prospectus Supplement, dated March 26, 2007 (collectively, the "Prospectus"), relating to the offering of the Class A-1, Class A-1S, Class A-2, Class A-2S, Class A-2SFL, Class A-3, Class A-3S, Class A-1A, Class X, Class A-M, Class A-MS, Class A-J, Class A-JFL, Class A-JS, Class B-S, Class C-S and Class D-S Certificates, the Private Placement Memorandum, dated March 26, 2007 (the "Privately Offered Certificate Private Placement Memorandum"), relating to the offering of the Class B, Class C, Class D, Class E, Class E-S, Class F, Class F-S, Class G, Class G-S, Class H, Class H-S, Class J, Class K, Class L, Class M, Class N, Class P and Class NR Certificates, and the Residual Private Placement Memorandum, dated March 26, 2007 (together with the Privately Offered Certificate Private Placement Memorandum, the "Private Placement Memoranda"), relating to the offering of the Class R, Class MR and Class LR Certificates, and nothing has come to my attention that would lead me to believe that the Prospectus, as of the date of the Prospectus Supplement or as of the date hereof, or the Private Placement Memoranda, as of the date of the Private Placement Memoranda or as of the date hereof, included or includes any untrue statement of a material fact relating to the Mortgage Loans or omitted or omits to state therein a material fact necessary in order to make the statements therein relating to the Mortgage Loans, in light of the circumstances under which they were made, not misleading.

        Capitalized terms used herein without definition have the meanings given them in the Agreement.

        [SIGNATURE APPEARS ON THE FOLLOWING PAGE]

        IN WITNESS WHEREOF, I have signed my name this ___ day of March, 2007.

        By: _____
           Name:
           Title:

\<PAGE\>

SCHEDULE I

MORTGAGE LOANS FOR WHICH A LENDER'S ENVIRONMENTAL POLICY WAS OBTAINED IN LIEU OF AN ENVIRONMENTAL SITE ASSESSMENT

Reference is made to the Representations and Warranties set forth in Exhibit B attached hereto corresponding to the Paragraph number set forth below.

Paragraph 21(a) and (e):

None.

<PAGE>

SCHEDULE II

MORTGAGED PROPERTY FOR WHICH OTHER
ENVIRONMENTAL INSURANCE IS MAINTAINED

Reference is made to the Representations and Warranties set forth in Exhibit B attached hereto corresponding to the Paragraph numbers set forth below:

Paragraph 21(b) and (c):

Walgreens Dallas

</TEXT>
</DOCUMENT>