instrument or document provided for herein or delivered or to be delivered hereunder or in connection herewith; and (e) shall incur no liability under or in respect of any Transaction Document by acting upon any notice (including notice by telephone), consent, certificate or other instrument or writing (which may be by telex or facsimile transmission) believed by it to be genuine and signed or sent by the proper party or parties.

SECTION 14A.3 <u>Funding Agent and Affiliates</u>. The respective Funding Agent of each Funding Group may generally engage in any kind of business with AerCap, the Borrower, the Service Providers, any Obligor, any of their respective Affiliates and any Person who may do business with or own securities of AerCap, the Borrower, the Service Providers, any Obligor or any of their respective Affiliates, all as if such Funding Agent were not a Funding Agent hereunder and without any duty to account therefor to any Lender in its respective Funding Group.

SECTION 14A.4 <u>Lender's Credit Decision</u>. Each Lender in a Funding Group acknowledges that it has, independently and without reliance upon its respective Funding Agent, any of its Affiliates or any other Lender and based on such documents and information as it has deemed appropriate, made its own evaluation and decision to enter into this Agreement. Each such Lender also acknowledges that it will, independently and without reliance upon such Funding Agent, any of its Affiliates or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own decisions in taking or not taking action under this Agreement.

SECTION 14A.5 <u>Certain Matters Affecting the Funding Agent.</u>

(a) The respective Funding Agent of each Funding Group may rely and shall be protected in acting or refraining from acting upon any resolution, officer's certificate, certificate of auditors or any other certificate, statement, instrument, opinion, report, notice, request, consent, order, appraisal, bond or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties.

(b) Such Funding Agent may consult with counsel, and any Opinion of Counsel shall be full and complete authorization and protection in respect of any action taken or suffered or omitted by such Funding Agent under this Agreement in good faith and in accordance with such Opinion of Counsel.

(c) Such Funding Agent shall be under no obligation to exercise any of the rights or powers vested in it by this Agreement, or to institute, conduct or defend any litigation under this Agreement or in relation to this Agreement, at the request, order or direction of any Lender in its respective Funding Group pursuant to the provisions of this Agreement unless such Lender shall have furnished to such Funding Agent security or indemnity satisfactory to such Funding Agent against the costs, expenses and liabilities that may be incurred therein or thereby.

(d) Such Funding Agent shall not be bound to make any investigation into the facts of matters stated in any resolution, certificate, statement, instrument opinion, report, notice, request, consent, order, approval, bond or other paper or documents, unless requested in writing to do so by its respective Funding Group Majority Lenders; <u>provided, however</u>, that if the payment

within a reasonable time to such Funding Agent of the costs, expenses or liabilities likely to be incurred by it in the making of such investigation is, in the opinion of such Funding Agent, not reasonably assured to such Funding Agent by the security afforded to it by the terms of this Agreement, such Funding Agent may require indemnity satisfactory to it against such cost, expense or liability as a condition to so proceeding; the reasonable expense of every such examination shall be paid by the Person making such request or, if paid by such Funding Agent, shall be reimbursed by the Person making such request upon demand.

(e)     Such Funding Agent may execute any of the trusts or powers under this Agreement or any other Transaction Document or perform any duties under this Agreement or any other Transaction Document either directly or by or through agents or attorneys or custodians. Such Funding Agent shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care by such Funding Agent. Such Funding Agent shall not be responsible for any misconduct or negligence attributable to the acts or omissions of any Service Provider or the Administrative Agent.

(f)     Such Funding Agent may rely, as to factual matters relating to any Service Provider, on an officer's certificate of such Service Provider.

(g)     Such Funding Agent shall not be required to take any action or refrain from taking any action under this Agreement, or any Transaction Document referred to herein, nor shall any provision of this Agreement or any such Transaction Document be deemed to impose a duty on such Funding Agent to take action, if such Funding Agent shall have been advised by counsel that such action is contrary to the terms of this Agreement or any Transaction Document or is contrary to law.

(h)     The Borrower and the Service Providers hereby (i) acknowledge that the Administrative Agent and Lenders have the right, in certain instances, to require such Funding Agent to take or refrain from taking certain actions under the terms of this Agreement and the other Transaction Documents and (ii) agree that such Funding Agent has no liability to the Borrower or the Service Providers with respect to taking or refraining from taking any such actions at the request of the Administrative Agent or Lender.

SECTION 14A.6 <u>Funding Agent Not Liable</u>. The respective Funding Agent of each Funding Group makes no representations as to the validity or sufficiency of this Agreement, the Notes or any other Transaction Document. Such Funding Agent shall at no time have any responsibility or liability for or with respect to the legality, validity or enforceability of any security interest in any Borrower Collateral, or the perfection and priority of such a security interest or the maintenance of any such perfection and priority or its ability to generate the payments to be distributed to Lenders under this Agreement, including, without limitation, the existence, condition, location and ownership of any property; the performance or enforcement of any Lease; the compliance by the Borrower, AerCap, the Service Providers, or the Collateral Agent with any covenant or the breach by the Borrower, AerCap, the Service Providers or the Collateral Agent, of any warranty or representation made under this Agreement or any other Transaction Document or in any related document and the accuracy of any such warranty or representation prior to such Funding Agent's receipt of notice or other discovery of any noncompliance therewith or any breach thereof, any investment of monies by or at the direction

151

of the Borrower or the Service Providers or any loss resulting therefrom; the acts or omissions of the Borrower, the Service Providers, the Collateral Agent, AerCap or any Obligor; any action of a Service Provider taken in the name of such Funding Agent; or any action by such Funding Agent taken at the instruction of AerCap, the Borrower or the Administrative Agent and/or Lenders which are authorized to provide such instruction in accordance with this Agreement or any of the other Transaction Documents; provided, however, that the foregoing shall not relieve such Funding Agent of its obligations to perform its duties under this Agreement. Such Funding Agent shall not be accountable for the use or application by the Borrower of any proceeds of the Advances, or for the use or application of any funds paid to a Service Provider in respect of the Leases or any other Aircraft Assets related to the Aircraft.

SECTION 14A.7 Agent May Own Notes. The respective Funding Agent of each Funding Group in its individual or any other capacity may become the owner or pledgee of Notes or any rights evidenced by Section 15.5(a) with the same rights as it would have if it were not such Funding Agent and may deal with the Service Providers in banking transactions with the same rights as it would have if it were not such Funding Agent.

SECTION 14A.8 Resignation or Removal of Agent.

(a) Subject to the provisions of subsection (c) of this Section 14A.8, any Person acting as a Funding Agent of a Funding Group may at any time resign as such Funding Agent under this Agreement and the other Transaction Documents by giving thirty (30) days' written notice thereof to the Borrower, the Service Providers and the Administrative Agent. Upon receiving such notice of resignation, the Funding Group Majority Lenders of such Funding Group (with approval of the Borrower, the Service Providers and Administrative Agent, in each case not to be unreasonably withheld or delayed) shall promptly appoint a successor Funding Agent by written instrument, in duplicate, one copy of which instrument shall be delivered to the resigning Funding Agent and the other copy of which instrument shall be delivered to the successor Funding Agent. If no successor Funding Agent shall have been so appointed and have accepted appointment within thirty (30) days after the giving of such notice of resignation, the resigning Funding Agent may petition any court of competent jurisdiction for the appointment of a successor Funding Agent. The Borrower shall reimburse the resigning Funding Agent, pursuant to the Flow of Funds hereof, for all expenses which shall have been incurred by such resigning Funding Agent in accordance with this Agreement and the other Transaction Documents prior to the effective date of resignation of such resigning Funding Agent.

(b) If at any time such Funding Agent shall be legally unable to act, or shall be adjudged a bankrupt or insolvent or a receiver of such Funding Agent or of its property shall be appointed or any public officer shall take charge or control of such Funding Agent or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, then the related Funding Group Majority Lenders shall remove such Funding Agent. If such Funding Agent shall have been removed under the authority of the immediately preceding sentence, such Funding Group Majority Lenders (with approval of the Borrower, the Service Providers and Administrative Agent, such approval not to be unreasonably withheld or delayed) shall promptly appoint a successor Funding Agent by written instrument, in duplicate, one copy of which instrument shall be delivered to the Funding Agent so removed and the other copy of which

152

instrument shall be delivered to the successor Funding Agent. The Borrower shall reimburse the removed Funding Agent pursuant to the Flow of Funds for all expenses which shall have been incurred by such removed Funding Agent in accordance with this Agreement and the Other Transaction Documents prior to the effective date of removal of such removed Funding Agent.

(c) Any resignation or removal of such Funding Agent and appointment of a successor Agent pursuant to any of the provisions of this Section 14A.8 shall not become effective until acceptance of appointment by the successor agent as provided in Section 14A.9.

SECTION 14A.9 Successor Funding Agent. Any successor Funding Agent appointed as provided in this Article XIVA shall execute, acknowledge and deliver to the Borrower, the Service Providers, the Administrative Agent and to its predecessor Funding Agent an instrument accepting such appointment under this Agreement, and thereupon the resignation or removal of the predecessor Funding Agent shall become effective and such successor Funding Agent, without any further act, deed or conveyance (except as provided below), shall become fully vested with all the rights, power, duties and obligations of its predecessor under this Agreement, with like effect as if originally named as Funding Agent; but, on request of the Borrower, a Service Provider, the Administrative Agent, or the successor Funding Agent, such predecessor Funding Agent shall, upon payment of its expenses then unpaid, execute and deliver an instrument transferring to such successor Funding Agent all of the rights, powers and trusts of the Funding Agent so ceasing to act, and shall duly assign, transfer and deliver to such successor Funding Agent all property and money held by such Funding Agent so ceasing to act hereunder for the benefit of the Lenders in its Funding Group. Upon request of any such successor Funding Agent, the Borrower shall execute any and all instruments for more fully and certainly vesting in and confirming to such successor Funding Agent all such rights, powers and trusts. The predecessor Funding Agent shall deliver to the successor Funding Agent all documents and statements held by it under this Agreement or any Transaction Document; and the predecessor Funding Agent and the other parties to the Transaction Documents shall amend any Transaction Document to make the successor Funding Agent the successor to the predecessor Funding Agent thereunder; and the Borrower, the Service Providers, the Administrative Agent and the predecessor Funding Agent shall execute and deliver such instruments and do such other things as may reasonably be required for fully and certainly vesting and confirming in the successor Funding Agent all such rights, powers, duties and obligations. No successor Funding Agent shall accept its appointment as provided in this Section 14A.9 unless at the time of such acceptance such successor Funding Agent shall be eligible under the provisions of Section 14A.10. Upon acceptance of appointment by a successor Funding Agent as provided in this Section 14A.9, the Borrower shall mail notice by first-class mail of the appointment of such successor Funding Agent and the address of the successor Funding Agent's corporate trust office under this Agreement to all Lenders at their addresses as shown in the Note Register or if no Note Register is required to be maintained with respect to any Lender pursuant to Section 15.5(b), such other address or such other address as shall be maintained for such Lender by the applicable Funding Agent. If the Borrower fails to mail such notice within ten (10) days after acceptance of appointment by the successor Funding Agent, the successor Funding Agent shall cause such notice to be mailed at the expense of the Borrower.

153

SECTION 14A.10  Eligibility Requirements for Successor Agent. Any successor Funding Agent under this Agreement shall be a corporation duly organized and validly existing under the laws of its jurisdiction of incorporation authorized under such laws to exercise corporate trust powers, having a combined capital and surplus of at least $500,000,000 and subject to supervision or examination by federal or state authority. If such corporation publishes reports of condition at least annually, pursuant to law or to the requirements of the aforesaid supervising or examining authority, then for the purpose of this Section 14A.10, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. In case at any time any successor Funding Agent shall cease to be eligible in accordance with the provisions of this Section 14A.10, such successor Funding Agent shall resign immediately in the manner and with the effect specified in Section 14A.8.

SECTION 14A.11  Merger or Consolidation of Agent. Any corporation into which any Funding Agent may be merged or with which it may be consolidated, or any corporation resulting from any merger or consolidation to which such Funding Agent shall be a party, or any corporation succeeding to the corporate trust business of such Funding Agent, shall be the successor of such Funding Agent under this Agreement, provided such corporation shall be eligible under the provisions of Section 14A.10, without the execution or filing of any instrument or any further act on the part of any of the parties to this Agreement, anything in this Agreement to the contrary notwithstanding.

SECTION 14A.12  Funding Agent May Enforce Claims Without Possession of Notes. Whether or not any Funding Agent has requested a Note pursuant to Section 2.5, all rights of action and claims under this Agreement or the Notes may be prosecuted and enforced by such Funding Agent without the possession of any Note or the production thereof in any proceeding relating thereto, and any such proceeding instituted by such Funding Agent shall be brought in its own name as agent for the applicable Funding Group.

SECTION 14A.13  Indemnification of Agent. Each Lender in a particular Funding Group agrees to indemnify its Funding Agent (to the extent not reimbursed by the Borrower), ratably according to the amount of the outstanding Advances of such Lender as a percentage of the aggregate outstanding Advances of all Lenders in such Funding Group, from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever which may be imposed on, incurred by, or asserted against such Funding Agent in any way relating to or arising out of this Agreement or any other Transaction Document or any action taken or omitted by such Funding Agent under this Agreement or any other Transaction Document; provided, however, that no such Lender shall be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from such Funding Agent's gross negligence or willful misconduct.

SECTION 14A.14  Other Arrangements. No provision contained in this Article XIVA shall, in any way, limit or diminish any duty, obligation or responsibility which any Funding Agent may have to any Lender in its Funding Group pursuant to any other provision of this

154

Agreement or any separate agreement or arrangement between such Funding Agent and such Lender.

## ARTICLE XV

## ASSIGNMENTS

SECTION 15.1 <u>Assignments</u>. The Borrower may not assign its rights or obligations hereunder or any interest herein without the prior written consent of the Administrative Agent and each Funding Agent. The Lenders shall have the right to assign and/or participate their respective Non-Conduit Lender Commitments and Advances with prior notice to the Borrower, but without the consent of the Borrower; <u>provided</u>, <u>however</u>, that, at any time prior to the occurrence of an Event of Default, (a) any assignee or participant shall not be an entity which, at the time of assignment or participation, competes with AerCap in a material manner in the leasing of commercial aircraft unless the Borrower has otherwise consented to such assignee or participant (an assignee or participant meeting such criteria, an "<u>Eligible Assignee</u>"), (b) the indemnities to which any such assignee or participant shall be entitled under <u>Section 6.2</u> or <u>6.3</u> hereof shall not be greater at and as of the time of assignment or participation than the indemnity to which the assignor or participant grantor would have been entitled under <u>Section 6.2</u> or <u>6.3</u> hereof had such assignment or participation not occurred, (c) any assignee shall be a Qualifying Lender, and (d) any assignor shall only be released from its Non-Conduit Lender Commitments to the extent provided in the immediately succeeding sentence. Upon the issuance of a Non-Conduit Lender Commitment to provide a portion of the Class A Advances or Class B Advances by any assignee of such Non-Conduit Lender Commitment of a Class A Lender or Class B Lender, which assignee either (A) has a long term debt rating of at least "A" from Standard & Poor's and/or "A2" from Moody's, or a short term debt rating of at least "A-1" from Standard & Poor's and/or "P-1" from Moody's, or (B) has otherwise been consented to by the Borrower (with such consent not to be unreasonably withheld or delayed), such Class A Lender or Class B Lender shall be released from the portion of its Non-Conduit Lender Commitment in an aggregate amount equal to the Non-Conduit Lender Commitment of such assignee. Notwithstanding the foregoing, UBSRESI shall have the right, at any time, to assign and/or participate its Non-Conduit Lender Commitments and Advances with prior notice to the Borrower, but without the consent of the Borrower, to any Affiliate of UBSRESI that is a Qualifying Lender at the time of such assignment or participation, and/or to any commercial paper conduit, that is a Qualifying Lender at the time of such assignment or participation, and is administered by any Affiliate thereof or administered by any other Person for the exclusive or non-exclusive benefit of any Affiliate of UBSRESI, and UBSRESI shall be released from the portion of its Non-Conduit Lender Commitment in an aggregate amount equal to the Non-Conduit Lender Commitment of the applicable assignee. In addition, any Lender or any of its Affiliates may pledge or assign any of its rights under this Agreement and under the Transaction Documents to any Federal Reserve Bank within the United States, or if a Qualifying Lender at the time of such pledge or assignment, to any liquidity or credit support provider or any commercial paper conduit collateral trustee without notice to or consent of the Borrower or any Funding Agent. In the case of any Lender that is a fund that invests in bank loans, such Lender may, without the consent of Borrower or the Administrative Agent or any Funding Agent, collaterally assign or pledge all or any portion of its rights under this Agreement and

155

under the Transaction Documents, to any holder of, trustee for, or any other representative of holders of, obligations owed or securities issued, by such fund, as security for such obligations or securities, in each case provided that each such holder is a Qualifying Lender. The parties hereto each acknowledge and agree that a Participant is neither an assignee nor a participant for purposes of this Article XV.

SECTION 15.2 Documentation. The assignor and the assignee involved in an assignment referred to in Section 15.1 shall execute and deliver to the Administrative Agent an Assignment and Assumption, duly executed by each such party, and the assigning Lender shall promptly execute and deliver all further instruments and documents, and take all further action, that the assignee may reasonably request, in order to perfect, protect or more fully evidence the assignee's right, title and interest in, and to enable the assignee to exercise or enforce any rights hereunder or under any applicable Note. The Administrative Agent shall promptly deliver to the Borrower a copy of each Assignment and Assumption that it receives pursuant to the terms of this Section 15.2.

SECTION 15.3 Rights of Assignee. The respective assignee receiving such assignment shall have all of the rights of such Lender hereunder and all references to the Lenders in Section 16.1 shall be deemed to apply to such assignee.

SECTION 15.4 Endorsement. Each Lender authorizes the related Funding Agent to, and each Funding Agent agrees that it shall, endorse any applicable Note to reflect any assignments made pursuant to this Article XV or otherwise (but failure to endorse such Note shall not affect the right of any Lender hereunder).

SECTION 15.5 Registration; Registration of Transfer and Exchange.

(a) Each Funding Agent shall maintain an account or accounts evidencing the indebtedness of the Borrower to each Lender in such Funding Agent's Funding Group resulting from each Advance made by such Lender hereunder, including the amounts of principal and Yield payable and paid to such Lender from time to time hereunder. The entries made in such accounts shall be conclusive and binding for all purposes, absent manifest error. To the extent that any Funding Agent has not requested a Note pursuant to Section 2.5, such Funding Agent shall keep a register (the "Non-Note Register") in which, subject to such reasonable regulations as it may prescribe, such Funding Agent shall provide for the registration of Advances and Non-Conduit Lender Commitments held by any member of the Funding Group related to such Funding Agent and of any transfers of such Advances and Non-Conduit Lender Commitments. Each Funding Agent is hereby appointed "Non-Note Registrar" for the purpose of registering any transfers of Advances and Non-Conduit Lender Commitments held by any member of the Funding Group related to such Funding Agent as herein provided. The entries made in the Non-Note Register by the Non-Note Registrar shall be conclusive and binding for all purposes, absent manifest error.

(b) To the extent that any Funding Agent has requested a Note pursuant to Section 2.5, such Funding Agent shall keep a register (the "Note Register") in which, subject to such reasonable regulations as it may prescribe, such Funding Agent shall provide for the registration of Notes held by the Funding Group related to such Funding Agent and of transfer of such Notes.

156

Each Funding Agent is hereby appointed "Note Registrar" for the purpose of registering any Notes and transfers of Notes held by the Funding Group related to such Funding Agent as herein provided. The entries made in the Note Register by the Note Registrar shall be conclusive and binding for all purposes, absent manifest error.

(c) With respect to any Lender, the transfer of any commitment of any Lender and the rights to principal of, and interest on, any such commitment shall not be effective until such transfer is recorded on the Note Register or Non-Note Register maintained by the applicable Funding Agent with respect to ownership of such commitments prior to such recordation all amounts owing to the transferor with respect to such commitments shall remain owing to the transferor.

(d) Each Person who has or who acquired a Note, any Advances and/or any Non-Conduit Lender Commitment shall be deemed by the acceptance or acquisition thereof to have (i) agreed to be bound by the provisions of this Section 15.5 and (ii) represented to the Administrative Agent that the transfer of such Note, Advance and/or Non-Conduit Lender Commitment to such Person is exempt from registration or qualification under the Securities Act of 1933, as amended, and all applicable state securities laws and that such transfer does not constitute a "prohibited transaction" under ERISA (and agreed to deliver to the Administrative Agent evidence of the foregoing upon request the Administrative Agent).

(e) At the option of the holder thereof, any Note may be exchanged for one or more new Notes of any authorized denominations and of a like Class and aggregate principal amount at an office or agency of the applicable Funding Agent. Whenever any Notes are so surrendered for exchange, the Borrower shall execute and the applicable Funding Agent shall authenticate and deliver the new Notes which the holder making the exchange is entitled to receive.

(f) Upon surrender for registration of transfer of any Note at an office or agency of the applicable Funding Agent, the Borrower shall, at the request of such Funding Agent, execute and deliver, in the name of the designated transferee or transferees, one or more new Notes of any authorized denominations and of a like Class and aggregate principal amount.

(g) All Notes issued upon any registration of transfer or exchange of any Note in accordance with the provisions of this Agreement shall be the valid obligations of the Borrower, evidencing the same debt, and entitled to the same benefits under this Agreement, as the Note(s) surrendered upon such registration of transfer or exchange.

(h) Every Note presented or surrendered for registration of transfer or for exchange shall (if so required by the Borrower or the applicable Funding Agent) be fully endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Note Registrar, duly executed by the holder thereof or his attorney duly authorized in writing. Each such Note shall be accompanied by a statement providing the name of the transferee and indicating whether the transferee is subject to income tax backup withholding requirements and whether the transferee is the sole beneficial owner of such Notes.

(i) No service charge shall be made for any registration of transfer or exchange of Notes, but the Borrower may require payment from the transferee holder of a sum sufficient to

157

cover any tax or other governmental charge that may be imposed in connection with any registration of transfer of exchange of Notes, other than exchanges pursuant to this Section 15.5.

(j)     The holders of the Notes shall be bound by the terms and conditions of this Agreement.

SECTION 15.6 Mutilated, Destroyed, Lost and Stolen Notes.

(a)     If any mutilated Note is surrendered to the applicable Funding Agent, the Borrower shall, at the request of such Funding Agent, execute and the applicable Funding Agent shall authenticate and deliver in exchange therefor a new Note of like Class and tenor and principal amount and bearing a number not contemporaneously outstanding.

(b)     If there shall be delivered to the Borrower and the applicable Funding Agent prior to the payment of any Note (i) evidence to their satisfaction of the destruction, loss or theft of such Note and (ii) such security or indemnity as may be required by them to save each of them and any agent of either of them harmless, then, in the absence of notice to the Borrower or the applicable Funding Agent that such Note has been acquired by a bona fide purchaser, the Borrower shall, at the request of such Funding Agent, execute and the applicable Funding Agent shall authenticate and deliver, in lieu of any such destroyed, lost or stolen Note, a new Note of like class, tenor and principal amount and bearing a number not contemporaneously outstanding.

(c)     Upon the issuance of any new Note under this Section 15.6, the Borrower may require the payment from the transferor holder of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses (including the fees and expenses of the applicable Funding Agent) connected therewith.

(d)     Every new Note issued pursuant to this Section 15.6 and in accordance with the provisions of this Agreement, in lieu of any destroyed, lost or stolen Note shall constitute an original additional contractual obligation of the Borrower, whether or not the destroyed, lost or stolen Note shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Agreement equally and proportionately with any and all other Notes duly issued hereunder.

(e)     The provisions of this Section 15.6 are exclusive and shall preclude (to the extent lawful) all other rights and remedies with respect to the replacement or payment of mutilated, destroyed, lost or stolen Notes.

SECTION 15.7 Persons Deemed Owners. The Borrower, any Service Provider, the applicable Funding Agent, the Administrative Agent and any agent of the Borrower, a Service Provider, the applicable Funding Agent or the Administrative Agent may treat the holder of any Note as the owner of such Note for all purposes whatsoever, whether or not such Note may be overdue, and none of the Borrower, any Service Provider, the applicable Funding Agent, the Administrative Agent and any agent of the Borrower, a Service Provider, the applicable Funding Agent, or the Administrative Agent shall be affected by notice to the contrary.

SECTION 15.8 Cancellation. All Notes surrendered for payment or registration of transfer or exchange shall be delivered to the applicable Funding Agent, and shall be promptly

canceled by it and may be destroyed pursuant to the applicable Funding Agent's securities retention policies. The Borrower shall promptly deliver to the applicable Funding Agent for cancellation any Notes previously authenticated and delivered hereunder which the Borrower may have acquired in any manner whatsoever, and all Notes so delivered shall be promptly canceled by the applicable Funding Agent. No Notes shall be authenticated in lieu of or in exchange for any Notes canceled as provided in this Section 15.8, except as expressly permitted by this Agreement.

## ARTICLE XVI

## INDEMNIFICATION

SECTION 16.1 General Indemnity of the Borrower. Without limiting any other rights which any such Person may have hereunder or under applicable law, the Borrower hereby agrees to indemnify the Administrative Agent, the Collateral Agent, each Funding Agent on behalf of the members in the related Funding Group, each Lender and each of their respective Affiliates, and each of their respective successors, transferees, participants and assigns (and successors, transferees, participants and assigns thereof) and all officers, directors, shareholders, controlling Persons, employees and agents of any of the foregoing (each of the foregoing Persons being individually called an "Indemnified Party"), forthwith on demand, from and against any and all damages, losses, claims, liabilities and related costs and expenses, including reasonable attorneys' fees and disbursements (all of the foregoing being collectively called "Indemnified Amounts") awarded against or incurred by any of them arising out of or relating to any Transaction Document (or the Original Agreement) or the transactions contemplated thereby or the use of proceeds therefrom by the Borrower, including (without limitation) in respect of the funding of any Advance or in respect of any Aircraft, excluding, however, (a) Indemnified Amounts to the extent determined by a final non-appealable decision of a court of competent jurisdiction to have resulted from gross negligence or willful misconduct on the part of any Indemnified Party or its Affiliate, (b) any Taxes, loss of Tax benefits, or costs incurred in contesting any Taxes or loss of Tax benefits (the related indemnities for which are set out solely in Section 6.3 of this Agreement), (c) any Indemnified Amounts the liabilities for which are explicitly set out in another provision of this Agreement or the Transaction Documents, including costs and expenses covered by Section 17.4 of this Agreement, and (d) any Indemnified Amounts that constitute a cost or expense that is required to be borne by any Indemnitee pursuant to any other explicit provision of the Transaction Documents. Without limiting the foregoing, but subject to the exclusions described in clauses (a), (b), (c) and (d) above, the Borrower agrees to indemnify each Indemnified Party for Indemnified Amounts arising out of or relating to:

(i)  the grant of a security interest to the Collateral Agent (for the benefit of the Lenders);

(ii)  the breach of any representation or warranty made by the Borrower, any Service Provider, any Borrower Subsidiary (or any of their respective officers) under or in connection with this Agreement or the other Transaction Documents, any Quarterly Report, Monthly Report, officer's certificate or any other information,

159

report or certificate delivered by the Borrower or any Service Provider pursuant hereto or thereto, which shall have been false or incorrect in any material respect when made or deemed made;

       (iii)    the failure by the Borrower, any Service Provider or any Borrower Subsidiary to comply in any material way with any applicable law, rule or regulation with respect to any Aircraft or Lease, or the nonconformity of any Aircraft or Lease with any such applicable law, rule or regulation;

       (iv)    the failure to vest and maintain vested in the Collateral Agent, for the benefit of the Lenders, a first-priority security interest in all the Borrower Collateral, free and clear of any Adverse Claim;

       (v)    the failure to file, or any delay in filing, financing statements or other similar instruments or documents under the UCC of any applicable jurisdiction or other applicable laws with respect to any Borrower Collateral;

       (vi)    any dispute, claim, offset or defense (other than discharge in bankruptcy) of an Obligor to the payment of any Lease (including, without limitation, a defense based on such Lease not being a legal, valid and binding obligation of such Obligor enforceable against it in accordance with its terms);

       (vii)    the commingling of the proceeds of the Aircraft, the Leases or any other Borrower Collateral at any time with other funds;

       (viii)    any investigation, litigation or proceeding related to this Agreement or the use of proceeds of Advances or the Ownership of the Aircraft, the Leases or any other Borrower Collateral;

       (ix)    any failure of the Borrower, any Service Provider, or any Borrower Subsidiary to comply with its covenants contained in this Agreement or any other Transaction Document; or

       (xi)    any claim brought by any Person other than an Indemnified Party arising from any activity by the Borrower, any Service Provider, or any Borrower Subsidiary or any Affiliate of any of them in servicing, administering or collecting any Aircraft or Lease.

SECTION 16.2  Waiver of Consequential Damages, Etc. To the fullest extent permitted by any applicable Requirement of Law, none of the Borrower, the Service Providers, or any Borrower Subsidiary shall assert, and each of them hereby waives, any claim against any Indemnified Party, on any theory of liability, for special, indirect, consequential or punitive damages (as opposed to direct or actual damages) arising out of, in connection with, or as a result of, this Agreement, any other Transaction Document or any agreement or instrument contemplated hereby, the transactions contemplated hereby or thereby, any Advance or the use of the proceeds thereof. No Indemnified Party shall be liable for any damages arising from the use by unintended recipients of any information or other materials distributed by it through

160

telecommunications, electronic or other information transmission systems in connection with this Agreement or the other Transaction Documents or the transactions contemplated hereby or thereby.

## ARTICLE XVII

## MISCELLANEOUS

SECTION 17.1 <u>No Waiver; Remedies</u>. Neither the execution and delivery of this Agreement nor any failure on the part of any Lender, the Administrative Agent, the Collateral Agent, any Funding Agent, any Indemnified Party or any Affected Party to exercise, nor any delay by any such Person in exercising, any right, power or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise by any such Person of any right, power or remedy hereunder preclude any other or further exercise thereof, or the exercise of any other right, power or remedy. The remedies herein provided are cumulative and not exclusive of any remedies provided by law. Without limiting the foregoing, each Lender is hereby authorized by the Borrower at any time and from time to time, to the fullest extent permitted by law, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other Indebtedness at any time owing by such Lender to or for the credit or the account of the Borrower against any and all obligations of the Borrower, now or hereafter existing under this Agreement, to the Administrative Agent, any Affected Party, any Indemnified Party or any Lender or their respective successors and assigns.

SECTION 17.2 <u>Amendments, Waivers</u>. Neither this Agreement nor any other Transaction Document, nor any provision hereof or thereof, may be waived, amended, supplemented or modified except, in each case, with the written consent of the Class Majority Lenders and Administrative Agent; <u>provided</u>, <u>however</u>, that no such waiver, amendment, supplement or modification shall be effective if the effect thereof would:

(i) waive, amend, supplement or modify any provision set forth in any of the following definitions without the consent of each of the Lenders: Additional Advance Commitment Period, Amortization Period, Class A Advances Limit, Class A Borrowing Base, Class A Borrowing Base Deficiency, Class B Advances Limit, Class B Borrowing Base, Class B Borrowing Base Deficiency, Conversion Date, Facility Termination Date, Initial Class A Borrowing Base, Initial Class B Borrowing Base, Initial Liquidity Reserve Amount, Required Liquidity Reserve Amount, Maximum Aggregate Principal Amount, Maximum Class A Principal Amount and Maximum Class B Principal Amount;

(ii) reduce the principal amount of any Advance or reduce the Yield payable in respect thereof, or reduce any fee payable hereunder, or change the form or currency of payment of any Obligation, without the written consent of each Lender affected thereby;

(iii) (A) change the Stated Maturity Date or any scheduled date of payment of any Class A Scheduled Principal Payment or Class B Scheduled Principal Payment, (B) postpone the date for payment of any Obligation hereunder or (C) change the amount of, waive or excuse any such payment, without the written consent of each Lender affected thereby;

161

      (iv)    increase the maximum duration of Interest Periods hereunder, without the written consent of each Lender affected thereby;

      (v)    permit the assignment or delegation by AerCap, the Borrower or any of the Borrower Subsidiaries of any of its respective rights or obligations under any Transaction Document (except as delegated pursuant to the Service Provider Agreements), without the written consent of each Lender;

      (vi)    release any material portion of the Collateral from the Lien of the Security Trust Agreement (other than in connection with a transfer, sale or other disposition permitted under Section 10.8 hereof or as otherwise provided in or contemplated by the Transaction Documents), or alter the relative priorities of the Obligations entitled to the Liens of the Security Trust Agreement, without the consent of each Lender;

      (vii)    change the amount of, or order of priority in which, payments of funds on deposit in the Collection Account, or the proceeds of draws from the Liquidity Reserve Account, are to be applied in accordance with the terms hereof, without the written consent of each Lender affected thereby;

      (viii)    change any provision in Section 4.4 or any other provision hereof in any manner which would alter the pro rata allocation among the Lenders, Class A Lenders or Class B Lenders, respectively, of Advances to be made hereunder or repayments in respect thereof, in each case without the written consent of each Lender affected thereby;

      (ix)    change any provision of this Section 17.2, without the consent of each Lender affected thereby;

      (x)    change the percentage set forth in the definition of Class Majority Lenders, Class A Majority Lenders, Class B Majority Lenders or Funding Group Majority Lenders, without the written consent of each Lender affected thereby;

      (xi)    change or waive any provision of Article XIV as the same applies to any Administrative Agent, or any other provision hereof as the same applies to the rights or obligations of any Administrative Agent, in each case without the written consent of such Administrative Agent;

      (xii)    change or waive any provision of Article XIVA as the same applies to any Funding Agent, or any other provision hereof as the same applies to the rights or obligations of any Funding Agent, in each case without the written consent of such Funding Agent; or

      (xiii)    change or waive any provision hereof as the same applies to the rights or obligations of the Administrative Agent, in each case without the written consent of such Administrative Agent.

      The Borrower and the Service Providers agree to make such amendments to this Agreement from time to time as may be necessary to evidence the addition of a new Lender in any Funding Group or the addition of an Other Funding Group hereunder.

SECTION 17.3 Notices, Etc.

(a) Generally. Except in the case of notices and other communications expressly permitted to be given by telephone (and except as provided in paragraph (b) below), all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service or sent by telecopier, to the intended party at the address or telecopier number of such party set forth under its name on the signature pages hereof or at such other address or telecopier number as shall be designated by such party in a written notice to the other parties hereto. Notices sent by hand or overnight courier service shall be deemed to have been given when received; notices sent by telecopier shall be deemed to have been given when sent (except that, if not given during normal business hours for the recipient, shall be deemed to have been given at the opening of business on the next business day for the recipient). Notices delivered through electronic communications to the extent provided in paragraph (b) below, shall be effective as provided in said paragraph (b).

(b) Electronic Communications. Notices and other communications to the Lenders hereunder may (subject to Section 17.3(c)) be delivered or furnished by electronic communication (including e mail and Internet or intranet websites); provided that the foregoing shall not apply to notices to any Lender pursuant to Article II if such Lender has notified the Administrative Agent that it is incapable of receiving notices under such Article by electronic communication. The Administrative Agent, the Trustee, the Borrower or the Servicer may, in its discretion, agree to accept notices and other communications to it hereunder by electronic communications pursuant to procedures approved by it (including as set forth in Section 17.3(c)); provided that approval of such procedures may be limited to particular notices or communications.

Unless the Administrative Agent or a Funding Agent otherwise prescribes, (i) notices and other communications sent to an e-mail address shall be deemed received upon the sender's receipt of an acknowledgment from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgment); provided that if such notice or other communication is not sent during the normal business hours of the recipient, such notice or communication shall be deemed to have been sent at the opening of business on the next business day for the recipient, and (ii) notices or communications posted to an Internet or intranet website shall be deemed received upon the deemed receipt by the intended recipient at its e-mail address as described in the foregoing clause (i) of notification that such notice or communication is available and identifying the website address therefor.

(c) Posting. Each of the Borrower and the Service Providers hereby agrees that it will provide to the Administrative Agent and each Funding Agent all information, documents and other materials that it is obligated to furnish to such Person pursuant to this Agreement and any other Transaction Document, including all notices, requests, financial statements, financial and other reports, certificates and other information materials, but excluding any such communication that (i) relates to a request for an Advance, (ii) relates to the payment of any principal or other amount due under this Agreement prior to the scheduled date therefor, (iii) provides notice of any Default under this Agreement or (iv) is required to be delivered to satisfy any condition precedent to the effectiveness of this Agreement and/or any borrowing or

163

other extension of credit hereunder (all such non-excluded communications, collectively, the "Communications"), by transmitting the Communications in an electronic/soft medium in a format reasonably acceptable to such Person at the e-mail address of such party set forth under its name on the signature pages hereof or at such other e-mail address(es) provided to the Service Providers or the Borrower from time to time or in such other form, including hard copy delivery thereof, as such Person shall require. In addition, each of the Borrower and the Service Providers agrees to continue to provide the Communications to such Person in the manner specified in this Agreement or any other Transaction Document or in such other form, including hard copy delivery thereof, as such Person shall require. Nothing in this Section 17.3 shall prejudice the right of any party hereto to give any notice or other communication pursuant to this Agreement or any other Transaction Document in any other manner specified in this Agreement or any other Transaction Document or as any such party shall require. Also, nothing in this Section 17.3 shall be interpreted as requiring any Borrower Group Member or the Servicer to provide copies of Leases in a manner that would disclose Lease rentals thereon, although copies of Leases with rental redacted, and other portfolio information may be provided.

Each of the Borrower and the Service Providers further agrees that the Administrative Agent and the Funding Agents may make the Communications available to the Lenders by posting the Communications on Intralinks or a substantially similar electronic transmission system (the "Platform"). The Platform is provided "as is" and "as available." None of the Administrative Agent or the Funding Agents warrant the accuracy or completeness of the Communications, or the adequacy of the Platform and they expressly disclaim liability for errors or omissions in the communications. No warranty of any kind, express, implied or statutory, including, without limitation, any warranty of merchantability, fitness for a particular purpose, non-infringement of third party rights or freedom from viruses or other code defects, is made by any of them in connection with the Communications or the Platform. In no event shall any of them have any liability to the Borrower, any Service Provider, or any of their Affiliates, any Lender or any other person for damages of any kind, including direct or indirect, special, incidental or consequential damages, losses or expenses (whether in tort, contract or otherwise) arising out of any transmission of communications through the Internet, except to the extent the liability of such person is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from such person's gross negligence or willful misconduct.

SECTION 17.4  Costs and Expenses. In addition to the rights of indemnification granted under Section 16.1, the Borrower agrees to pay on demand, at any time on or after the Closing Date, all costs and expenses (other than with respect to Taxes, the indemnities for which are set out solely in Section 6.3 of this Agreement) in connection with the preparation, execution, delivery and administration of this Agreement, the other Transaction Documents, and the other documents and agreements to be delivered hereunder, and any amendments, waivers or consents executed in connection with this Agreement and/or the other Transaction Documents, including, without limitation, (i) the reasonable legal fees and disbursements of Kaye Scholer LLP, counsel to the Administrative Agent, the initial Funding Agents hereunder and the initial Lenders hereunder, (ii) the other reasonable out-of-pocket costs and expenses of the Administrative Agent, the Funding Agents and the Lenders (the "Credit Parties"), including, without limitation, due diligence expenses, and printing, reproduction, document delivery and communication costs, each as incurred in connection with the transactions contemplated hereunder, or the preparation,