review, negotiation, execution and delivery and/or enforcement of the Transaction Documents (but excluding legal fees and disbursements for any counsel other than the counsel described in clause (i) above), (iii) any amendments, waivers and consents (but not any assignments or participation agreements) executed in connection with the Transaction Documents, (iv) all costs and expenses, if any (including counsel fees and expenses), of the Credit Parties, in connection with the enforcement of the Transaction Documents, and (v) all costs and expenses (including counsel fees and expenses) of the Collateral Agent and the Account Bank. The Borrower shall pay all amounts under this Section 17.4 from time to time upon demand pursuant to the Flow of Funds and after the Borrower and the Service Providers have been furnished with reasonably detailed evidence thereof. The Borrower's obligations under this paragraph shall survive any termination of this Agreement.

SECTION 17.5 Binding Effect; Survival. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, and the provisions of Article VI, Article XI and Article XVI shall inure to the benefit of the Indemnified Parties, respectively, and their respective successors and assigns; provided, however, nothing in the foregoing shall be deemed to authorize any assignment not permitted by Article XV. This Agreement shall create and constitute the continuing obligations of the parties hereto in accordance with its terms, and shall remain in full force and effect until such time, after the Facility Termination Date when all Obligations have been finally and fully paid and performed. The rights and remedies with respect to any breach of any representation and warranty made by the Borrower pursuant to Article IX and the indemnification and payment provisions of Article VI and Article XVI and Section 17.4 shall be continuing and shall survive any termination of this Agreement and any termination of any member of the AerCap Group's rights to act as a Service Provider hereunder or under any other Transaction Document.

SECTION 17.6 Captions and Cross References. The various captions (including, without limitation, the table of contents) in this Agreement are provided solely for convenience of reference and shall not affect the meaning or interpretation of any provision of this Agreement. Unless otherwise indicated, references in this Agreement to any Section, Schedule or Exhibit are to such Section of or Schedule or Exhibit to this Agreement, as the case may be, and references in any Section, subsection, or clause to any subsection, clause or subclause are to such subsection, clause or subclause of such Section, subsection or clause.

SECTION 17.7 Severability. Any provision of this Agreement held to be invalid, illegal or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity, illegality or unenforceability without affecting the validity, legality and enforceability of the remaining provisions hereof; and the invalidity of a particular provision in a particular jurisdiction shall not invalidate such provision in any other jurisdiction.

SECTION 17.8 Governing Law; Venue.

(a)     THIS AGREEMENT SHALL IN ACCORDANCE WITH SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO ANY CONFLICTS OF LAW PRINCIPLES THEREOF THAT WOULD CALL FOR THE APPLICATION OF THE LAWS OF ANY OTHER JURISDICTION, EXCEPT TO

THE EXTENT THAT THE PERFECTION OF THE INTERESTS OF THE COLLATERAL AGENT FOR THE BENEFIT OF THE LENDERS IN THE BORROWER COLLATERAL, THE PARENT COLLATERAL, OR REMEDIES HEREUNDER, IN RESPECT THEREOF, ARE GOVERNED BY THE LAWS OF A JURISDICTION OTHER THAN THE STATE OF NEW YORK.

(b)     EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUIT, LEGAL ACTION OR PROCEEDING ARISING DIRECTLY OR INDIRECTLY UNDER OR RELATING TO THIS AGREEMENT IN ANY COURT LOCATED IN THE BOROUGH OF MANHATTAN, CITY AND STATE OF NEW YORK AND HEREBY FURTHER WAIVES ANY CLAIM THAT A COURT LOCATED IN THE BOROUGH OF MANHATTAN, CITY AND STATE OF NEW YORK IS NOT A CONVENIENT FORUM FOR ANY SUCH SUIT, LEGAL ACTION OR PROCEEDING.

(c)     EACH OF THE BORROWER AND THE SERVICE PROVIDERS, AGREES THAT THE PROCESS BY WHICH ANY SUIT, ACTION OR PROCEEDING IS BEGUN MAY BE SERVED ON IT BY BEING DELIVERED IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING IN THE CITY OF NEW YORK TO NATIONAL REGISTERED AGENTS, INC., WITH AN OFFICE ON THE DATE HEREOF AT 875 AVENUE OF THE AMERICAS, SUITE 501, NEW YORK, NEW YORK 10001, AND EACH OF THEM HEREBY APPOINTS NATIONAL REGISTERED AGENTS, INC. ITS DESIGNEE, APPOINTEE AND AGENT TO RECEIVE, ACCEPT AND ACKNOWLEDGE FOR AND ON ITS BEHALF SUCH SERVICE OF LEGAL PROCESS.

SECTION 17.9  Counterparts.

(a)     Counterparts; Effectiveness. This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement shall become effective when it shall have been executed by the Administrative Agent and when the Administrative Agent shall have received counterparts hereof that, when taken together, bear the signatures of each of the other parties hereto. Delivery of an executed counterpart of a signature page of this Agreement by telecopier shall be effective as delivery of a manually executed counterpart of this Agreement.

(b)     Electronic Execution of Assignments. The words "execution," "signed," "signature," and words of like import in any Transaction Document shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper-based recordkeeping system, as the case may be, to the extent and as provided for in any applicable Requirement of Law, including the Federal Electronic Signatures in Global and National Commerce Act, the New York State Electronic Signatures and Records Act, or any other similar state laws based on the Uniform Electronic Transactions Act.

166

SECTION 17.10 <u>WAIVER OF JURY TRIAL</u>. EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHTS IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER, OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OTHER TRANSACTION DOCUMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF THE BORROWER, THE ADMINISTRATIVE AGENT, THE LENDERS OR ANY OTHER AFFECTED PERSON OR INDEMNIFIED PARTY. THE BORROWER ACKNOWLEDGES AND AGREES THAT IT HAS RECEIVED FULL AND SUFFICIENT CONSIDERATION FOR THIS PROVISION (AND EACH OTHER PROVISION OF EACH OTHER TRANSACTION DOCUMENT TO WHICH IT IS A PARTY) AND THAT THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE ADMINISTRATIVE AGENT AND THE LENDERS ENTERING INTO THIS AGREEMENT AND EACH SUCH OTHER TRANSACTION DOCUMENT.

SECTION 17.11 <u>Third Party Beneficiary</u>. This Agreement shall only inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns and no third party is entitled to benefit from this Agreement or the terms hereof.

SECTION 17.12 <u>No Proceedings</u>. Each of the Service Providers and the Collateral Agent agrees that it will not institute against the Borrower or any Borrower Subsidiary, or join any other Person in instituting against the Borrower or any Borrower Subsidiary, any insolvency proceeding (namely, any proceeding of the type referred to in the definition of Event of Bankruptcy) so long as, any Advances or other amounts due from the Borrower hereunder shall be outstanding or there shall not have elapsed one year <u>plus</u> one day since the last day on which any such Advances or other amounts shall be outstanding. Each of the Service Providers, the Collateral Agent, each Lender, the Administrative Agent, each Funding Agent and any assignee or other holder of a Note hereby agrees that it will not institute against any Other Conduit, or join any other Person in instituting against any Other Conduit, any insolvency proceeding (namely, any proceeding of the type referred to in the definition of Event of Bankruptcy) so long as any commercial paper or other senior indebtedness issued by such Other Conduit, as applicable, shall be outstanding or there shall not have elapsed one year <u>plus</u> one day since the last day on which any such commercial paper or other senior indebtedness shall be outstanding. The foregoing shall not limit such Person's right to file any claim in or otherwise take any action with respect to any insolvency proceeding that was instituted by any Person other than such Person.

SECTION 17.13 <u>ENTIRE AGREEMENT</u>. THIS AGREEMENT AND THE OTHER TRANSACTION DOCUMENTS EXECUTED AND DELIVERED HEREWITH REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES HERETO AND THERETO AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS AMONG THE PARTIES.

SECTION 17.14 <u>Resolution of Drafting Ambiguities</u>. Each of the Borrower and the Service Providers acknowledges and agrees that it was represented by counsel in connection with the execution and delivery of the Transaction Documents to which it is a party, that it and its counsel reviewed and participated in the preparation and negotiation hereof and thereof and that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation hereof or thereof.

SECTION 17.15 <u>Confidentiality</u>.

(a) Unless otherwise required by applicable law, the Borrower and the Service Providers each agrees to maintain the confidentiality of the financial terms and conditions of this Agreement, the other Transaction Documents and the transactions contemplated hereby and thereby and the identity of the parties hereto, to the other Transaction Documents and otherwise participating in such transactions; *provided*, that this Agreement may be disclosed to (i) third parties to the extent such disclosure is made pursuant to a written agreement of confidentiality in form and substance reasonably satisfactory to the Administrative Agent and each Funding Agent, (ii) the Borrower's legal counsel and auditors and (iii) any Government Entity if required by law.

(b) Each of the Administrative Agent, each Funding Agent, the Collateral Agent, the Account Bank (in each case, for itself and not on behalf of any Lender or other party hereto) and each of the Lenders agrees to maintain the confidentiality of the Information (as defined below), except that Information may be disclosed (a) to its Affiliates and to its and its Affiliates' respective partners, directors, officers, employees, agents, advisors and other representatives (it being understood that the persons to whom such disclosure is made will be informed of the confidential nature of such Information and instructed to keep such Information confidential), (b) to the extent requested by any regulatory authority purporting to have jurisdiction over it (including the Japanese central bank, in the case of a Lender organized under the laws of Japan, or any self-regulatory authority, such as the National Association of Insurance Commissioners), (c) to the extent required by applicable Requirements of Law or by any subpoena or similar legal process, (d) to any other party hereto, (e) in connection with the exercise of any remedies hereunder or under any other Transaction Document or any action or proceeding relating to this Agreement or any other Transaction Document or the enforcement of rights hereunder or thereunder, (f) subject to an agreement containing provisions substantially the same as those of this <u>Section 17.15(b)</u>, to (i) any assignee of or participant in (and including a Participant), or any prospective assignee of or participant in (including a prospective Participant), any of its rights or obligations under this Agreement, (ii) any actual or prospective counterparty (or its advisors) to any swap or derivative transaction relating to the Borrower and its obligations or (iii) any rating agency for the purpose of obtaining a credit rating applicable to any Lender, (g) to the Borrower, any member of the AerCap Group or any of their respective Subsidiaries or (h) to the extent such Information (x) becomes publicly available other than as a result of a breach of this <u>Section 17.15(b)</u> or (y) becomes available to the Administrative Agent, any Funding Agent, the Collateral Agent, the Account Bank, any Lender or any of their respective Affiliates on a nonconfidential basis from a source other than a member of the AerCap Group, the Borrower, a Service Provider or any of their respective Subsidiaries. For purposes of this Section, "Information" means all information received from AerCap or any member of the AerCap Group, the Borrower or any of their respective Subsidiaries relating to AerCap, the AerCap

168

Group, the Borrower or any of their respective Subsidiaries or any of their respective businesses, other than any such information that is available to the Administrative Agent, any Funding Agent, the Collateral Agent, the Account Bank or any Lender on a nonconfidential basis prior to disclosure by AerCap, any member of the AerCap Group, the Borrower or any of their respective Affiliates. Any person required to maintain the confidentiality of Information as provided in this Section 17.15(b) shall be considered to have complied with its obligation to do so if such person has exercised the same degree of care to maintain the confidentiality of such Information as such person would accord to its own confidential information.

SECTION 17.16 USA Patriot Act Notice. The Administrative Agent, each Funding Agent (in each case, for itself and not on behalf of any Lender) and each Lender hereby notifies the Borrower and AerCap that pursuant to the requirements of the Patriot Act, such Person is required to obtain, verify, and record information that identifies the Borrower and AerCap, which information includes the name and address of the Borrower and AerCap and other information that will allow such Person to identify the Borrower and AerCap in accordance with the Patriot Act.

SECTION 17.17 Collateral Agent/Account Bank Notice. To help fight the funding of terrorism and money laundering activities, the Collateral Agent and the Account Bank will obtain, verify and record information identifies individuals or entities that establish a relationship or open an account with the Collateral Agent and/or Account Bank. The Collateral Agent and Account Bank will ask for the name, address, tax identification number and other information that will allow either of them to identify the individual or entity who is establishing the relationship or opening the account. The Collateral Agent and Account Bank may also ask for formation documents such as articles of incorporation, an offering memorandum, or other identifying documents to be provided.

SECTION 17.18 Collateral Agent/Account Protections. The rights, protections and indemnities of the Collateral Agent as set forth in the Security Trust Agreement shall be incorporated herein for the benefit of the Collateral Agent and the Account Bank, as applicable, as though explicitly set forth herein.

SECTION 17.19 Termination.

(a) Termination. The Borrower may, at its option, terminate this Agreement and the other Credit Documents (collectively, the "Termination"); provided, that:

 (i) the Borrower has prepaid the Outstanding Principal Amount and paid all Yield accrued thereon, all accrued Fees and all other Obligations (collectively, the "Termination Payment");

 (ii) the Borrower shall have provided to the Administrative Agent and each Lender at least five Business Days' prior written notice of the Termination Payment and Termination; and

 (iii) either (x) the Termination Payment and Termination shall occur after the first anniversary of the Closing Date or (y) the Borrower shall have paid to (1)

169

the Class A Funding Agent, on behalf of the Class A Lenders, a fee equal to the aggregate Class A Commitment Fees that, but for the occurrence of the Termination, would have been payable under the Fee Letter with respect to the period commencing on the date of the Termination and ending on the first anniversary of the Closing Date (such Class A Commitment Fees to be calculated assuming that the Outstanding Class A Principal Amount shall be zero during such period) and (2) the Class B Funding Agent, on behalf of the Class B Lenders, a fee equal to the aggregate Class B Commitment Fees that, but for the occurrence of the Termination, would have been payable under the Fee Letter with respect to the period commencing on the date of the Termination and ending on the first anniversary of the Closing Date (such Class B Commitment Fees to be calculated assuming that the Outstanding Class B Principal Amount shall be zero during such period).

**[Signature pages to follow.]**

170

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the day and year first above written.

           AERFUNDING 1 LIMITED, as Borrower

By: _____
    Name:_____
    Title: _____

AerFunding 1 Limited
Clarendon House
2 Church Street
Hamilton, HM 11
Bermuda
Facsimile No.: 441-292-4720 / 295-1861

with a copy to:

AerCap Administrative Services Limited
AerCap House
Shannon
Ireland
Attention: Company Secretary
Facsimile No.: +353 61 723850

[Credit Agreement]

AERCAP IRELAND LIMITED

By: _____
    Name: _____
    Title: _____

AerCap Ireland Limited
AerCap House
Shannon
Ireland
Attention: Company Secretary
Facsimile No.: +353 61 723850

AERCAP ADMINISTRATIVE SERVICES
  LIMITED

By: _____
    Name: _____
    Title: _____

AerCap Administrative Services Limited

AerCap House
Shannon
Ireland
Attention: Company Secretary
Facsimile No.: +353 61 723850

AERCAP CASH MANAGER II LIMITED

By: _____
    Name: _____
    Title: _____

AerCap Cash Manager II Limited
AerCap House
Shannon
Ireland
Attention: Company Secretary
Facsimile No.: +353 61 723850

[Credit Agreement]

UBS SECURITIES LLC, as Administrative Agent
and as UBS Funding Agent

By: _____
    Name: _____
    Title: _____

By: _____
    Name: _____
    Title: _____

1285 Avenue of the Americas - 11th Floor
New York, NY 10019
Attention: Prakash Wadhwani
Telephone No.: 212-713-3983
Facsimile No.: 212-713-7999
e-mail: Prakash.Wadhwani@ubs.com

with a copy to:

1285 Avenue of the Americas - 11th Floor
New York, NY 10019
Attention: Kathy Pringle
Telephone No.: 212-713-9750
e-mail: Kathy-K.Pringle@ubs.com

with a further copy to:

677 Washington Blvd., 6th floor tower
Stamford, CT 06901
Attention: Marc Ferrante
Telephone No.: 203-719-1251
e-mail: DL-RESIFUNDING@ubs.com

[Credit Agreement]

UBS REAL ESTATE SECURITIES INC., as a
UBS Non-Conduit Lender, a Class A Lender and a
Class B Lender

By: _____
    Name: _____
    Title: _____

By: _____
    Name: _____
    Title: _____

Class A Non-Conduit Lender Commitment:
$675,000,000

Class B Non-Conduit Lender Commitment:
$135,000,000

1285 Avenue of the Americas - 11th Floor
New York, NY 10019
Attention: Prakash Wadhwani
Telephone No.: 212-713-3983
Facsimile No.: 212-713-7999
e-mail: Prakash.Wadhwani@ubs.com

with a copy to:

1285 Avenue of the Americas - 11th Floor
New York, NY 10019
Attention: Kathy Pringle
Telephone No.: 212-713-9750
e-mail: Kathy-K.Pringle@ubs.com

with a further copy to:

677 Washington Blvd., 6th floor tower
Stamford, CT 06901
Attention: Marc Ferrante
Telephone No.: 203-719-1251
e-mail: DL-RESIFUNDING@ubs.com

[Credit Agreement]

DEUTSCHE BANK TRUST COMPANY
AMERICAS, as Collateral Agent and as Account
Bank

By: _____
    Name: _____
    Title: _____

By: _____
    Name: _____
    Title: _____

60 Wall Street - 26th Floor
New York, NY 10005
Attention: Trust and Securities/Structured Finance
    Services
Facsimile No.: 1-212-553-2458

[Credit Agreement]

---

THE TOKYO STAR BANK, LIMITED, as a
Class A Lender and UBS Non-Conduit Lender

By: _____
    Name: Tomomi Kihara
    Title: Attorney-in-Fact

Class A Non-Conduit Lender Commitment:
    $30,000,000

1-6-16, Akasaka, Minato-ku
Tokyo 107-8480
JAPAN
Attention: Tomomi Kihara
Telephone No.: +81-3-3224-2986
Facsimile No.: +81-3-3224-6210

[Credit Agreement]

> AOZORA BANK, LTD., as a
> Class A Lender, a Class B Lender and a
> UBS Non-Conduit Lender
>
> By: _____
>     Name: _____
>     Title: _____
>
> By: _____
>     Name: _____
>     Title: _____
>
> Class A Non-Conduit Lender Commitment:
>    $50,000,000
>
> Class B Non-Conduit Lender Commitment:
>    $25,000,000
>
> 3-1, Kudan-minami 1-chome, Chiyoda-ku
> Tokyo 102-8660
> JAPAN
> Attention: Hajime Nemoto, Structured Credit and
>     Investment Division
> Telephone No.: +81-3-5212-9413
> Facsimile No.: +81-3-3263-9872

[Credit Agreement]

NEWSTAR FINANCIAL, INC., as a
Class B Lender and UBS Non-Conduit Lender

By: _____
    Name:
    Title:

Class B Non-Conduit Lender Commitment:
$10,000,000

_____
_____
_____
Attention: _____
Telephone No.: _____
Facsimile No.: _____

[Credit Agreement]

KfW, as a
Class A Lender and UBS Non-Conduit Lender

By: _____
    Name:
    Title:

Class A Non-Conduit Lender Commitment:
$75,000,000

KfW IPEX Bank
Palmengartenstrasse 5-9
60325 Frankfurt am Main
GERMANY
Attention: Torsten Osterloh / X2b
Telephone No.: +49 69 7431 2457
Facsimile No.: +49 69 7431 3767

[Credit Agreement]

Appendix I

*Portfolio Limitations and Eligible Aircraft*

**TABLE 1**

| Aircraft Type | Category | Maximum Aircraft Type Concentration Percentage* | Maximum Age (in months)* |
|---|---|---|---|
| A319-100 | 1 | 75% | 96-120 |
| A320-200 (A1 Engine) | 2 | 25% | 120-189 |
| A320-200 (Non A1 Engine) *** | 1 | 75% | 96-120 |
| A321-200 | 1 | 25%-35% | 96-120 |
| B737-300 | 2 | 20-35% | 144-189 |
| B737-300F | 2 | 20-35% | 60-84** |
| B737-400 | 2 | 20-35% | 144-189 |
| B737-400F | 2 | 20-35% | 60-84** |
| B737-500 | 3 | 20-35% | 144-180 |
| B737-700 | 1 | 75% | 96-120 |
| B737-800 | 1 | 75% | 96-120 |
| B747-400F | 2 | 10-15% | 60-84* |
| B757-200Pax | 3 | 10-20% | 144-180 |
| B757-200F | 2 | 20-30% | 60-84** |
| B767-300ER | 3 | 15%-20% | 144-180 |
| B777-200ER | 2 | 25% | 96-120 |
| B777-300ER | 2 | 25% | 96-120 |
| A330-200 | 2 | 15% | 96-144 |
| A330-300 | 3 | 5-10% | 96-144 |
| MD-11F | 3 | 10-15% | 60-84** |

\*    Ranges are listed due to their relevance to Advance Rate Adjustment provisions
\*\*   Aircraft Age from Freighter Conversion Effective Date
\*\*\*  A320-200 (Non A1 Engine) older than 120 months of age shall be treated thereafter as an A320-200 (A1 Engine)

A-1-1