UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
BRIARWOOD INVESTMENTS INC.,
Individually and On Behalf of
All Others Similarly Situated,

              Plaintiff,          **Opinion and Order**

   - against -            07 civ. 8159 (LLS)

CARE INVESTMENT TRUST INC.,
F. SCOTT KELLMAN, ROBERT O'NEILL,
and FLINT D. BESECKER,

              Defendants.
- - - - - - - - - - - - - - - - - -X

     In this putative class action alleging violations of §§ 11,
12(a)(2) and 15 of the Securities Act of 1933 based on claimed
misleading statements in the corporate defendant's initial
public offering documents, defendants move pursuant to Fed. R.
Civ. P. 12(b)(6) to dismiss the amended complaint for failure to
state a claim upon which relief can be granted.

     For the reasons which follow, the motion is denied.

BACKGROUND

     The facts set forth below, which are presumed to be true on
this motion to dismiss, are drawn from the allegations of the
amended complaint and the documents referenced therein.

     Defendant Care Investment Trust Inc. provides mortgage
financing to companies operating healthcare-related facilities
and it invests in healthcare-related real estate assets.  See
Amend. Compl. ¶¶ 7, 18.  The individual defendants are Care's
CEO (F. Scott Kellman), its CFO (Robert O'Neill), and a director
on its board (Flint D. Besecker), each of whom signed the
Registration Statement filed with the Securities and Exchange

- 1 -

Commission ("SEC") in connection with Care's initial public offering ("IPO"). See id. ¶¶ 8-11.

The lead-plaintiffs prosecuting this case are investors who purchased Care common stock pursuant or traceable to the company's IPO, after which the value of Care's stock declined substantially. See ¶¶ 6, 48.

The IPO began on June 22, 2007, the same date on which Care's Prospectus, which forms part of the Registration Statement, became effective. See id. ¶¶ 1, 20. More than 15 million shares of Care common stock were sold to the public at $15.00 per share during the IPO, from which Care received about $210 million in net proceeds. See id. ¶ 20.

According to the Prospectus (at pp. 2-5, 9), Care's plan was to grow its business by using most of the IPO proceeds to acquire an initial portfolio of assets consisting of mortgage loans secured by healthcare facilities and, thereafter, to finance new investments by borrowing against or "leveraging" the assets in its portfolio.

The amended complaint alleges that the Registration Statement and Prospectus (collectively, the "Offering Documents") were negligently prepared and, as a result, omitted facts which rendered specified statements materially misleading.[1] It attacks the statements in the Prospectus (at p. 10) that:

> We will use short-term financing, in the form of warehouse facilities. Warehouse lines are typically collateralized loans made to borrowers who invest in securities and loans and, in turn, pledge the resulting securities and loans to the warehouse lender. We are currently negotiating a warehouse facility with Column Financial Inc., an

---

[1]     The amended complaint also alleges that the Offering Documents "contained untrue statements of material fact" and "were not prepared in accordance with the rules and regulations governing their preparation." Amend. Compl. ¶ 22.

affiliate of Credit Suisse Securities, LLC, an affiliate of one of our underwriters, which we expect to be in place shortly after consummation of this offering.  We are also currently negotiating a warehouse facility with UBS Real Estate Securities Inc., an affiliate of one of our underwriters, which we expect to be in place soon after consummation of this offering.  There is no assurance, however, that we will be able to close these facilities on terms favorable to us, if at all.

The amended complaint claims that those statements were materially misleading because they:

. . . failed to disclose that the Company was experiencing significant difficulties securing warehouse lines on acceptable terms, and that — at the time of the IPO — it had only one lender to negotiate with as opposed to two lenders as represented in the Offering Documents.  In the Offering Documents, Care Investment disclosed that it was separately negotiating a warehouse facility with Column Financial Inc. ("Column Financial") and UBS Real Estate Securities Inc. ("UBS Real Estate"), both of which are affiliates of certain underwriters of the IPO.  At the time of the IPO, however, UBS Real Estate's commercial real estate securities group was nothing more than a shell and the group was virtually non-existent.  Thus, the Company did not have two lenders lined up to provide warehouse facilities, but rather was struggling to convince a single lender to extend it a warehouse facility on favorable terms. This information was material because any delay in obtaining the financing would have a direct and adverse material impact on the Company's ability to provide financing to other companies in the healthcare industry, thereby delaying the Company's ability to leverage the capital raised in the IPO and hindering the Company's growth rate as a result.  And, with only one potential lender available to the Company, the Company's ability to obtain a warehouse facility on favorable terms was drastically reduced.

Amend. Compl. ¶ 33.

The amended complaint alleges that the "Company's difficulties in securing warehouse facilities and other sources of funding were first disclosed to the public after the IPO in its Form 10-Q" issued on August 14, 2007. Id. ¶ 34. That Form 10-Q stated that:

- "our efforts to negotiate our warehouse facilities on terms favorable to us are taking longer than expected" (Care's Aug. 14, 2007 Form 10-Q at p. 16);

- "the terms of the facilities under negotiation are likely to be more restrictive with respect to advance rates and possibly more expensive than we originally planned" (id. at p. 21); and

- "If we are unable to obtain financing on terms acceptable to us, we may be unable to grow the Company in accordance with our business plan" (id. at p. 12).

Care ultimately obtained a warehouse facility on October 1, 2007, but only from Column Financial, and "the advance rates under the warehouse facility were 'less than the levels expected at the inception of negotiations for the facility.'" Amend. Compl. ¶ 36 (quoting Care's Nov. 14, 2007 Form 10-Q at p. 12).

When the amended complaint was filed on February 19, 2008, "Care Investment stock traded in a range of $10.00 to $10.50 per share, approximately 33% less than the IPO price." Id. ¶ 40.

On the basis of the foregoing and other allegedly misleading statements in the Prospectus included within the Registration Statement, the amended complaint alleges violations of the Securities Act of 1933. Count I alleges that all of the defendants violated Section 11 of the Act, which (among other things) imposes civil liability on every person who signed a registration statement in cases where any part of the registration statement, when such part became effective, contained any untrue statement of a material fact or any

statement which was misleading because of the omission of a material fact.  See 15 U.S.C. § 77k.  Count II alleges that all of the defendants violated Section 12(a)(2) of the Act, which (among other things) allows a stock buyer to sue any person who "offers or sells a security" to the buyer by means of a prospectus which contained any such statements.  See 15 U.S.C. § 77*l*(a)(2).  Count III alleges that the individual defendants, each of whom is a director or senior executive of Care, are jointly and severally liable for Care's primary violations of Sections 11 and 12 pursuant to Section 15 of the Act, which extends liability for such primary violations to any person who by stock ownership, agency or otherwise is in control of the primary violator.  See 15 U.S.C. § 77*o*.

DISCUSSION

Defendants argue that the amended complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) because it does not state any claim upon which relief can be granted.

1.

Defendants maintain that the claims under Sections 11 and 12(a)(2) of the Act fail because none of the statements sued upon was materially misleading or false.

The Prospectus (at p. 10) stated that Care was negotiating with Column Financial and UBS Real Estate to secure warehouse facilities, which in each case "we expect to be in place shortly [or "soon"] after consummation of this offering."  The amended complaint alleges that it was materially misleading to issue those statements without disclosing that "the Company was experiencing significant difficulties securing warehouse lines

on acceptable terms" (Amend. Compl. ¶ 33), and that "UBS Real Estate's commercial real estate securities group was nothing more than a shell" (id.).

Defendants argue that the Prospectus adequately disclosed the risk that Care would be unable to secure warehouse facilities on favorable terms by warning —— in the next sentence —— that:

> There is no assurance, however, that we will be able to close these facilities on terms favorable to us, if at all.

Prospectus at p. 10.   Defendants maintain that this protects them under the "bespeaks caution" doctrine, "'in light of adequate cautionary language set out in the same offering.'" Rombach v. Chang, 355 F.3d 164, 173 (2d Cir. 2004).

The protections afforded by that doctrine are unavailable here.   The amended complaint alleges that Care failed to disclose that it "was experiencing significant difficulties securing warehouse lines on acceptable terms" (Amend. Compl. ¶ 33), and that "the Company did not have two lenders lined up to provide warehouse facilities, but rather was struggling to convince a single lender to extend it a warehouse facility on favorable terms" (id.).   Thus, to say it expected that there would soon be two such facilities was untrue and misleading. "If a party is aware of an actual danger or cause for concern, the party may not rely on a generic disclaimer in order to avoid liability." Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 226 (S.D.N.Y. 2008)(citing cases).

The amended complaint's factual allegations must be accepted as true on this motion to dismiss.   See Roth v. Jennings, 489 F.3d 499, 509-11 (2d Cir. 2007);   Global Network

*Communications, Inc. v. City of New York*, 458 F.3d 150, 156 (2d
Cir. 2006).

2.

Defendants contend that the amended complaint pleads no
facts showing that the fall in Care's stock price after the IPO
was caused by disclosure of the information omitted from the
Offering Documents, as opposed to the market-wide drop because
of defaults on sub-prime mortgages.

A plaintiff is not required to plead "loss causation"
(i.e., that the misleading statements in suit caused the
depreciation in the stock price) to establish a prima facie
claim under §§ 11 or 12(a)(2) of the Securities Act.  <u>See</u> 15
U.S.C. §§ 77k(a), (e), 77*l*(a)(2), (b);  <u>In re Adams Golf, Inc.
Sec. Litig.</u>, 381 F.3d 267, 277 (3d Cir. 2004)("Under sections 11
and 12(a)(2), plaintiffs do not bear the burden of proving
causation.").  The defendant may raise the absence of loss
causation as an affirmative defense to claims under §§ 11 and
12(a)(2) by proving that the misleading statements did not cause
the depreciation in the stock's value.  <u>See</u> 15 U.S.C. §§ 77k(e),
77*l*(b).  A claim may be dismissed for failure to state a claim,
on the basis of an affirmative defense, only if the facts
establishing the defense appear on the face of the complaint.
<u>See</u> <u>United States v. Space Hunters, Inc.</u>, 429 F.3d 416, 426 (2d
Cir. 2005).

The amended complaint alleges facts showing that lead-
plaintiffs purchased their Care stock at about $15.00 per share
in connection with the IPO (<u>see</u> Amend. Compl. ¶¶ 1, 6, 20),
before defendants revealed that "the Company did not have two
lenders lined up to provide warehouse facilities, but rather was
struggling to convince a single lender to extend it a warehouse

facility on favorable terms" (id. ¶ 33).  It further alleges that Care first disclosed those difficulties in its Form 10-Q issued on August 14, 2007 (see id. ¶ 34), which divulged that the negotiations to obtain such facilities were taking longer than expected (see Care's Aug. 14, 2007 Form 10-Q at p. 16), that the terms of the facilities appeared likely to be more restrictive with respect to advance rates and possibly more expensive than initially anticipated (see id. at p. 21), and that Care might be incapable of growing in accordance with its business plan if it is unable to obtain financing on acceptable terms (see id. at p. 12).

On the date of those disclosures, Care's stock price fell to $12.05 from its opening price of $13.00 per share, a decline of over 7% within a single day.[2]

One cannot conclude on the face of the amended complaint, as a matter of law, that the drop in the price of Care's stock after the IPO was caused by a market-wide downturn, rather than the disclosures of Care's difficulties obtaining warehouse financing.

3.

Defendants argue that the amended complaint does not adequately plead facts showing that the individual defendants, as "sellers", solicited lead-plaintiffs' stock purchases.

The amended complaint alleges that each of the individual defendants is a senior executive or director of Care who signed the Registration Statement (of which the Prospectus forms a

---

[2]    See Ganino v. Citizens Utilities Co., 228 F.3d 154, 167 n.8 (2d Cir. 2000)(". . . the district court may take judicial notice of well-publicized stock prices without converting the motion to dismiss into a motion for summary judgment.").

part) issued to the investing public in connection with the IPO (Amend. Compl. ¶¶ 8-11, 17(b)), and that Care's and the individual defendants' "actions of solicitation included preparing the inaccurate and misleading Prospectus and participating in efforts to market the IPO to investors" (id. ¶ 53).

Numerous courts in this circuit hold that on a motion to dismiss, officers or directors of the stock issuer who signed its registration statement are deemed to have solicited the purchase of the offered stock. See In re Flag Telecom Holdings, Ltd. Sec. Litig., 352 F. Supp. 2d 429, 454 (S.D.N.Y. 2005)("An officer or director who signs a Registration Statement containing materially false or misleading statements or omissions is deemed, for pleading purposes, to have solicited a purchase within the meaning of [§ 12(a)(2)]."); Steed Finance LDC v. Nomura Sec. Int'l, Inc., No. 00 Civ. 8058 (NRB), 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001)("A person who signs a registration statement is deemed to have solicited the purchase of the offered securities."); In re APAC Teleservice, Inc. Sec. Litig., No. 97 Civ. 9145 (BSJ), 1999 WL 1052004, at *11 (S.D.N.Y. Nov. 19, 1999)("Courts have concluded that because the prospectus itself is a document that solicits the purchase of securities, those who sign the registration statement should be deemed persons who solicited the purchase of the offered securities."); Degulis v. LXR Biotechnology, Inc., 928 F. Supp. 1301, 1315 (S.D.N.Y. 1996)(denying dismissal of claim under predecessor to § 12(a)(2): "it is, at this stage of the proceedings, a sufficient allegation to permit Plaintiffs to present evidence that, alone or in tandem with other acts, the signatures constituted active solicitation").

4.

Under Section 15 of the Securities Act, every person who controls any primary violator of Sections 11 or 12 of the Act is also held liable jointly and severally with the primary violator. See 15 U.S.C. § 77o.

Since the amended complaint sufficiently alleges that Care committed primary violations of §§ 11 and 12(a)(2) of the Act, and that each of the individual defendants is a senior executive or director of Care, it follows that dismissal of the § 15 claim against the individual defendants must be denied.

CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the amended complaint (Docket No. 28) is denied.

So ordered.

Dated: New York, NY
       March 4, 2009

Louis L. Stanton
Louis L. Stanton
U.S.D.J.