UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
BRIARWOOD INVESTMENTS, INC., : Civil Action No. 1:07-cv-08159-LLS
Individually and On Behalf of All Others :
Similarly Situated, :
 :
                Plaintiffs, :
 :
   vs. :
 :
CARE INVESTMENT TRUST INC., F. :
SCOTT KELLMAN, ROBERT O'NEILL and :
FLINT D. BESECKER, :
 :
                Defendants. :
 :
---------------------------------------------------------------x


MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR
PARTIAL RECONSIDERATION OF THE COURT'S DECEMBER 4, 2009 RULING

Pursuant to Local Civil Rule 6.3 and Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure, Lead Plaintiffs UNITE HERE National Retirement Fund and Norfolk County Retirement System ("Plaintiffs") respectfully submit this memorandum of law in support of their motion for partial reconsideration of the Court's ruling at the December 4, 2009 status conference (the "Ruling"), insofar as the Ruling prohibits Plaintiffs from conducting third-party discovery of Column Financial Inc. ("Column")[1] and UBS Real Estate Securities, LLC ("UBS").

## I.   PRELIMINARY STATEMENT

This Court should reconsider its Ruling and permit third-party discovery of Column and UBS for at least three independent reasons: (i) as a threshold matter, Defendants[2] lack legal standing to challenge the scope or propriety of third-party discovery, because they have not and cannot identify any privilege or privacy right implicated by the discovery of information within Column's or UBS's possession; (ii) the discovery that Plaintiffs seek from Column and UBS is relevant under the liberal scope of discovery afforded by the Federal Rules of Civil Procedure, and cannot be replaced by the documents that Defendants have selectively culled and made available; and (iii) Defendants have expressly agreed that discovery of negotiations with Column and UBS concerning warehouse financing is relevant here, and their eleventh-hour abandonment of that position weighs heavily against the Ruling's prohibition of the third-party discovery sought here. Accordingly, this Court should reconsider the Ruling and permit Plaintiffs to conduct discovery of Column and UBS in accordance with the outstanding third-party subpoenas directed to each of them.

---

[1]   Column is an affiliate of Credit Suisse Securities, LLC ("Credit Suisse"), which has agreed to respond to the subpoena directed to Column.

[2]   Defendants are Care Investment Trust Inc. ("Care" or the "Company"), F. Scott Kellman, Robert O'Neil and Flint D. Besecker.

**II.     STATEMENT OF FACTS**

A core issue in this case is whether information exists that undermines Defendants' representations in the Final Prospectus[3] that Care expected to secure warehouse financing from Column or UBS shortly after the close of the Company's initial public offering in June 2007 (the "IPO").[4]  A separate yet related issue is whether UBS even had the *ability* to issue warehouse financing at that time, which, in turn, bears on whether Defendants accurately represented in the Final Prospectus that negotiations were then ongoing with UBS.  Consequently, information concerning Care's prospects of securing warehouse financing from Column and UBS is directly relevant to whether Defendants' representations in the Final Prospectus were misleading when made (and thus actionable).  This is why third-party discovery of Column and UBS is critical here.  This is also presumably why, until the December 4, 2009 status conference, even *Defendants* had taken the position that third-party discovery of Care's negotiations with Column and UBS is relevant (and appropriate) here.

With these issues at center stage, the parties, with the Court's input and approval, established the terms of the August 5, 2009 Stipulation and Order of Dismissal and Scheduling (the "Scheduling Order," Docket No. 57).  *See* Scheduling Order, annexed as Exhibit A to the Declaration of Joseph Russello, dated December 18, 2009 (to which all exhibits referenced herein are annexed).  The Scheduling Order provides, in relevant part, that "[d]iscovery shall proceed on the single issue of the

---

[3]     On June 22, 2007, Care filed the Final Prospectus with the U.S. Securities and Exchange Commission in connection with the IPO.

[4]     Despite the fact that Defendants have argued that some level of scienter is required, the law is quite clear that "[l]iability against an issuer of a security is virtually absolute, even for innocent misstatements," while "[o]ther defendants bear the burden of demonstrating due diligence." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983).  Here, Defendants have stated time and time again that they will not assert a due diligence defense.

alleged false and misleading statements regarding warehouse financing, as well as with respect to Plaintiffs' claims brought under Sections 12(a)(2) and 15 of the Securities Act of 1933." *See* Ex. A, ¶2; *see also id.*, ¶1 (providing similarly).[5]  The Scheduling Order required the parties to appear for a status conference on December 4, 2009.  *See id.*, ¶7.

Consistent with the terms of the Scheduling Order, Plaintiffs served third-party subpoenas on the underwriters of Care's IPO (which Plaintiffs believed were also potential sources of financing); Column and UBS, which Care identified as potential warehouse lenders in the Final Prospectus; and Golden Tree Asset Management LP, a significant shareholder and participant in the IPO.[6]  As is evident from the subpoenas that Plaintiffs served on Column and UBS, the discovery that Plaintiffs sought not only concerned the preparation of the Final Prospectus and the underwriters' involvement in the IPO, but also issues related to class certification and the claims brought under Sections 12(a)(2) and 15 (as the Scheduling Order expressly permits).  Copies of the subpoenas directed to Column and UBS are annexed as Exhibits B and C, respectively.

Leading up to the December 4, 2009 status conference, the parties engaged in numerous communications, both telephonically and in writing, in an effort to resolve various discovery

---

[5]  The Scheduling Order further provides that "Plaintiffs may also take discovery of Defendants on issues relating to class certification."  *See* Ex. A, ¶2.  Although the Scheduling Order expressly provides that "[d]iscovery on all other issues is stayed pending further order of the Court[,]" *see id.*, Defendants nevertheless served, in contravention of this crystal clear prohibition, a demand for the production of documents that largely concerned Plaintiffs' investigation of the claims that are and ***were*** alleged in this action (*e.g.*, the dismissed claims).  In the interest of advancing this action, Plaintiffs responded to the demand without delay and produced relevant, non-privileged documents.

[6]  The underwriters of the IPO were: Credit Suisse; UBS Investment Bank; Banc of America Securities LLC ("BofA"); Bear Stearns & Co. Inc.; Merrill Lynch & Co.; Piper Jaffray & Co.; RBC Capital Markets Corp.; Stifel Nicolaus & Co., Inc.; and Wachovia Securities.  In limited instances, such as with respect to Column, a subpoena was also served on the underwriter's parent company.

disputes. Although the parties resolved several disputes, at least two fundamental issues remained outstanding: (i) whether Plaintiffs could seek discovery of Care's efforts to secure warehouse financing from sources *other than* UBS and Column; and (ii) whether discovery was strictly limited to Care's "negotiations" with UBS and Column before the IPO.

During the course of negotiations, however, Defendants *never once* objected to Plaintiffs' efforts to seek discovery concerning Care's efforts to obtain warehouse financing from UBS or Column.[7] In fact, while Defendants purported to object in part to certain document requests directed to the subpoenaed third-parties, they expressly indicated that they *did not* object to third-party discovery of Care's efforts to obtain warehouse financing from Column or UBS.[8] Nor did any third-party – all of which are sophisticated business entities, with legal representation – move to quash a subpoena or seek the intervention of any court out of which a subpoena was issued.[9]

---

[7] In contrast, during the course of negotiations, Plaintiffs consistently objected to Defendants' *ex parte* communications with the subpoenaed third-parties and argued that Defendants lacked standing to object to such discovery.

[8] *See, e.g.,* Ex. D, p.1-2 (October 30, 2009 letter from defense counsel, purporting to object to the "scope of discovery" sought by the third-party subpoenas, "except to the extent such requests seek documents specifically regarding Care's negotiations to obtain warehouse financing from UBS . . . or Column . . . at the time of the IPO"); Ex. E, p.1 (November 24, 2009 letter from defense counsel, purporting to object to the "scope of discovery" sought by the third-party subpoena directed to BofA, "except to the extent such requests seek documents specifically regarding Care's negotiations to obtain warehouse financing from UBS . . . or Column . . . at the time of the IPO"); *see also* Ex. D, p. 2 (requesting that Plaintiffs "narrow" the third-party subpoenas to "documents specifically regarding Care's negotiations to obtain warehouse financing from UBS . . . or Column . . . at the time of the IPO"); Ex. E, p.1 (seeking Plaintiffs' "determination of whether Defendants' proposed scope of discovery[,]" which was restricted to "Care's negotiations to obtain warehouse financing from UBS . . . or Column . . . at the time of the IPO[,]" was "sufficient").

[9] Because certain of the subpoenaed third-parties are headquartered outside of New York, the subpoenas directed to them were issued out of the appropriate district court within their states.

**III.    ARGUMENT**[10]

    **A.    The Liberal Standard Applicable to this Motion**

A court can exercise its discretion to reconsider a ruling "'to correct a clear error or prevent a manifest injustice.'" *See Cobalt Multifamily Investors I, LLC v. Shapiro*, No. 06 Civ. 6468 (KMW) (MHD), 2009 U.S. Dist. LEXIS 60481, at *13 (S.D.N.Y. July 15, 2009) (granting reconsideration and quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003)); *see also* Fed. R. Civ. P. 59, 60.  A court can also grant reconsideration where it has overlooked pertinent legal authority or facts. *See Kiobel v. Royal Dutch Petroleum Co.*, No. 02 Civ. 7618 (KMW) (HBP), 2009 U.S. Dist. LEXIS 106798, at *7 (S.D.N.Y. Nov. 16, 2009) (granting reconsideration); *see also In re Adelphia Communs. Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2009 U.S. Dist. LEXIS 56013, at *12 (S.D.N.Y. July 1, 2009) (granting reconsideration of denial of discovery).  In essence, a court may grant reconsideration to evaluate any matters "that might reasonably be expected to alter the conclusion reached by the court." *See Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995) (upholding district court's reconsideration of earlier ruling based on failure to consider legal authority).

    Here, in issuing the Ruling, the Court did not consider Defendants' lack of standing to object to third-party discovery – a threshold deficiency that should have precluded the Court from reaching Defendants' relevancy argument (or issuing the Ruling).  Moreover, reconsideration of the Ruling is also necessary because the wholesale preclusion of third-party discovery will result in manifest injustice – not only to Plaintiffs, but also to the absent members of the putative shareholder class – by foreclosing the opportunity to conduct discovery of the two warehouse lenders at issue.

---

[10]    Citations are omitted and emphasis is added, unless otherwise noted.

### B. Defendants Do Not Have Standing to Object to the Subpoenas

"Absent a showing of privilege or privacy, a party ordinarily lacks standing to challenge a non-party subpoena with a motion for a protective order or to quash . . . ." *McMahan Sec. Co., L.P. v. FB Foods, Inc.*, No. M8-85 (JFK), 2005 U.S. Dist. LEXIS 26301, at *1-*2 (S.D.N.Y. Nov. 2, 2005); *see also Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness.").

Here, Defendants cannot legitimately identify a privilege or privacy interest sufficient to give rise to legal standing to object to the third-party discovery that Plaintiffs seek from Column and UBS. In fact, Defendants have *never* objected to third-party discovery in this case on the ground of any claimed privilege or privacy interest, instead expressly limiting their objection to the *scope* of discovery (and hence relevancy). *See McMahan*, 2005 U.S. Dist. LEXIS 26301, at *1-*2 (reaching the issue of relevancy only after assuming *arguendo* that the objecting party had standing to object in the first place). Because Defendants do not have standing to object to third-party discovery, the Court should grant reconsideration and modify its Ruling to permit discovery of Column and UBS.

### C. Plaintiffs are Entitled to Pursue Discovery of Column and UBS

Even assuming that Defendants have standing to object to third-party discovery (which they do not), the targeted discovery sought here is relevant and material to Plaintiffs' prosecution of this action under the liberal scope of relevancy mandated by the Federal Rules of Civil Procedure.

#### 1. Relevance is Broadly Construed

Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party is entitled to conduct "discovery regarding any matter, not privileged, which is relevant to [a] claim or defense . . . ." *See Daval Steel Prods., Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991) (observing that "[t]his obviously broad rule is liberally construed"). "'Relevance' for purposes of

- 6 -

discovery, moreover, is synonymous with 'germane' and . . . it should not be read as meaning 'competent' or 'admissible.'" *Koch v. Greenberg*, No. 07 Civ. 9600 (BSJ)(DF), 2009 U.S. Dist. LEXIS 61913, at *6 (S.D.N.Y. July 14, 2009) (quoting *Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 556 (S.D.N.Y. 1996)). As Rule 26(b)(1) itself provides, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

As such, "relevance" is broadly construed to include "'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *See Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Griffith v. United States*, No. M8-85 (JFK), 2007 U.S. Dist. LEXIS 36672, at *5 (S.D.N.Y. Apr. 24, 2007) (same). Information is thus discoverable where there is "***any possibility***" that it "may be relevant." *Griffith*, 2007 U.S. Dist. LEXIS 36672, at *5 (citation omitted). It is for this reason that the party resisting production bears the burden of demonstrating that the information sought is irrelevant and thus not subject to disclosure.[11] *See, e.g., JPMorgan Chase Bank, N.A. v. IDW Group, LLC*, No. 08 Civ.

---

[11] It is also for this reason that courts have routinely permitted discovery concerning business transactions that do not necessarily relate to the one at issue, where the information sought might be arguably relevant under the liberal rules of discovery. *See, e.g., Barkley v. Olympia Mortgage Co.*, No. 04-CV-875 (RJD) (KAM), 2007 U.S. Dist. LEXIS 13308, at *11 (E.D.N.Y. Feb. 27, 2007) (granting motion to compel production of documents relating to mortgage transactions other than that at issue, because information was "relevant" to plaintiffs' allegations); *Bulkmatic Transp. Co. v. Pappas*, No. 99 Civ. 12070 (RMB)(JCF), 2001 U.S. Dist. LEXIS 6062, at *7 (S.D.N.Y. May 11, 2001) (holding similarly with respect to other transactions); *DeSmeth v. Samsung America, Inc.*, No. 92 Civ. 3710 (LBS)(RLE), 1998 U.S. Dist. LEXIS 1907, at *23 (S.D.N.Y. Feb. 19, 1998) (permitting discovery of other transactions). With this in mind, Plaintiffs had sought discovery from underwriters ***in addition to*** Column and UBS on the basis that Care's difficulties in securing warehouse financing from such other underwriters could directly bear on Care's ability to secure such financing from Column and UBS. As noted above, until recently, Defendants consistently took the position that third-party discovery of Care's negotiations with Column and UBS was relevant.

9116 (PGG), 2009 U.S. Dist. LEXIS 42853, at *3-*4 (S.D.N.Y. May 20, 2009) (citing *Melendez v. Greiner*, No. 01 Civ. 07888 (SAS)(DF), 2003 U.S. Dist. LEXIS 19084, at *4 (S.D.N.Y. Oct. 22, 2003)); *Chamberlain v. Farmington Sav. Bank*, 247 F.R.D. 288, 290 (D. Conn. 2007) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

As explained herein, the relevancy of the information sought from Column and UBS is beyond question, and Care's own documents – however complete Defendants *think* they are – are no substitute for the internal correspondence and other documents maintained by Column and UBS. Moreover, assuming that Defendants have standing to object to third-party discovery in the first place (which they do not), *they* bear the burden of demonstrating that such discovery is irrelevant. They have not done so, nor can they.

### 2.     Discovery from Column and UBS is Relevant and Necessary

Discovery from Column and UBS is relevant and necessary because they were the two prospective warehouse lenders that Care identified in the Final Prospectus in the following statements that Plaintiffs allege are misleading:

> We are currently negotiating a warehouse facility with Column Financial Inc., an affiliate of Credit Suisse Securities, LLC, an affiliate of one of our underwriters, which we expect to be in place shortly after consummation of this offering. We are also currently negotiating a warehouse facility with UBS Real Estate Securities Inc., an affiliate of one of our underwriters, which we expect to be in place soon after consummation of this offering.

*See* Amended Class Action Complaint (the "Complaint," cited as "¶__") (Docket No. 27), ¶32. As the Complaint alleges, these statements were misleading when made because, *inter alia*:

> At the time of the IPO . . . UBS Real Estate's commercial real estate securities group was nothing more than a shell and the group was virtually non-existent. Thus, the Company did not have two lenders lined up to provide warehouse facilities, but rather was struggling to convince a single lender to extend it a warehouse facility on favorable terms.

¶33.[12]  Thus, as Defendants previously agreed, discovery of Column and UBS is essential to the central issue in this case: Care's ability to secure warehouse financing.

Moreover, as a practical matter, Defendants cannot possibly produce all of the potentially relevant information within *any* third-party's possession, let alone Column's or UBS's.  Here, for example, Defendants are not likely to have possession of documents reflecting whether UBS was an active commercial lender at the time of the IPO, or those concerning Column's internal assessment of Care's ability to secure warehouse financing.  For these reasons, Defendants' request that Plaintiffs and the Court should merely take their word for the fact that they have produced *all* relevant documents – even those from Column and UBS – rings hollow.

Put simply, Defendants' subjective belief as to the adequacy of disclosure is not the yardstick by which relevancy is determined, nor should it be.  Accordingly, as even Defendants have acknowledged, Plaintiffs are entitled to conduct third-party discovery of Column and UBS.

---

[12]   Care eventually secured a line of financing from Column on October 1, 2007 – more than three months after the effective date of the Registration Statement (of which the Prospectus is part).  ¶36.  In contrast, it never mentioned UBS again.  ¶35.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its Ruling and, in doing so, permit third-party discovery of Column and UBS.

DATED:  December 18, 2009                COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
JOSEPH RUSSELLO


                    /s/ *Joseph Russello*
JOSEPH RUSSELLO

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LABATON SUCHAROW LLP
JONATHAN GARDNER
PAUL J. SCARLATO
CAROL C. VILLEGAS
140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)

*Co-Lead Counsel for Lead Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants in this action.

*s/ Joseph Russello*
JOSEPH RUSSELLO

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
E-mail:JRUSSELLO@csgrr.com