UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIARWOOD INVESTMENTS, INC.,
Individually and On Behalf of All Others
Similarly Situated,

                    Plaintiff,

   v.

CARE INVESTMENT TRUST INC.,
F. SCOTT KELLMAN, ROBERT O'NEILL
and FLINT D. BESECKER,

                    Defendants.

Civil Action No. 1:07-cv-08159-LLS

**MEMORANDUM OF LAW IN OPPOSITION TO
LEAD PLAINTIFFS' MOTION FOR RECONSIDERATION**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ............................................................................................................................... 2

    1.    Plaintiffs Do Not Meet the Legal Standard for Reconsideration ........................... 2

    2.    Defendants Have Standing To Enforce the Discovery Order ................................ 4

    3.    It Would Not Be Manifestly Unjust To Deny the Motion ..................................... 6

CONCLUSION ............................................................................................................................ 8

# TABLE OF AUTHORITIES

*Arias-Zeballos v. Tan*,
   06 Civ. 1268, 2007 U.S. Dist. LEXIS 5068 (S.D.N.Y. Jan. 24, 2007) ...................................... 5

*Burrell v. AT&T Corp.*,
   03 Civ. 2490, 2006 U.S. Dist. LEXIS 93393 (S.D.N.Y. Dec. 21, 2006) .................................... 4

*Cobalt Multifamily Investors I, LLC v. Shapiro*,
   06 Civ. 6468, 2009 U.S. Dist. LEXIS 111399 (S.D.N.Y. Nov. 30, 2009) ................................ 3

*Collens v. City of New York*,
   222 F.R.D. 249 (S.D.N.Y. 2004) ................................................................................................ 4

*DGM Invs., Inc. v. New York Futures Exch., Inc.*,
   288 F. Supp. 2d 519 (S.D.N.Y. 2003) .................................................................................... 3, 4

*In re Health Mgmt. Sys. Sec. Litig.*,
   113 F. Supp. 2d 613 (S.D.N.Y. 2000) ....................................................................................... 3

*Kingsway Fin. Servs. v. PricewaterhouseCoopers LLP*,
   03 Civ. 5560, 2008 U.S. Dist. LEXIS 77018 (S.D.N.Y. Oct. 2, 2008) ..................................... 7

*Kiobel v. Royal Dutch Petroleum Co.*,
   02 Civ. 7618, 2009 U.S. Dist. LEXIS 106798 (S.D.N.Y. Nov. 16, 2009) ................................ 3

*Langford v. Chrysler Motors Corp.*,
   513 F.2d 1121 (2d Cir. 1975) .................................................................................................... 5

*Ntsebeza v. Daimler AG (In re S. African Apartheid Litig.)*,
   617 F. Supp. 2d 228 (S.D.N.Y. 2009) .................................................................................... 3, 6

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
   322 F.3d 147 (2d Cir. 2003) .................................................................................................. 2, 3

*R.F.M.A.S., Inc. v. So*,
   640 F. Supp. 2d 506 (S.D.N.Y. 2009) ....................................................................................... 3

*Shrader v. CSX Transport.*,
   70 F.3d 255 (2d Cir. 1995) ......................................................................................................... 3

*Syposs v. United States*,
   181 F.R.D. 224 (W.D.N.Y. 1998) .............................................................................................. 5

*Torres v. Carry*,
08 Civ. 8967, 2009 U.S. Dist. LEXIS 105425 (S.D.N.Y. Oct. 29, 2009) ................................ 6

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992)........................................................................................ 3

*Williams v. New York City Dep't of Corr.*,
219 F.R.D. 78 (S.D.N.Y. 2003) .................................................................................... 6

## INTRODUCTION

Through a series of Rule 16 conferences, the Court and the parties narrowed this case to a single issue, culminating in the entry of the Stipulation and Order of Dismissal and Scheduling dated August 5, 2009 (the "Discovery Order," which is attached to the Declaration of Joseph Russello ("Russello Decl.") as Exhibit A). The Discovery Order narrowed discovery to "the single issue of the alleged false and misleading statements regarding warehouse financing." (Discovery Order ¶ 2.) The "alleged false and misleading statements regarding warehouse financing" are the following:

> We are currently negotiating a warehouse facility with Column Financial Inc., an affiliate of Column Financial Securities, LLC, an affiliate of one of our underwriters, which we expect to be in place shortly after consummation of this offering. We are also currently negotiating a warehouse facility with UBS Real Estate Securities Inc., an affiliate of one of our underwriters, which we expect to be in place soon after consummation of this offering. There is no assurance, however, that we will be able to close these facilities on terms favorable to us, if at all. (Reg. Stmt. at 10.)

Thus, the Discovery Order limits discovery to the status of Care's negotiations to obtain warehouse financing from Column Financial Inc. (Column) or UBS Real Estate Securities Inc. (UBS) at the time of Care's IPO.

Plaintiffs promptly ignored the Discovery Order. They served a total of thirteen subpoenas (the "Subpoenas") on Column, UBS, all of the underwriters of the IPO, and a Care shareholder. The Subpoenas neither attached nor disclosed the Discovery Order. (Russello Decl. Exs. B-C.) Upon receiving notice of the subpoenas, Defendants objected to them as beyond the scope of the Discovery Order.[1] As a compromise, Defendants offered to permit

---

[1] Plaintiffs assert that Defendants requested documents related to dismissed claims "in contravention of [the] crystal clear prohibition" that "[d]iscovery on all other issues is stayed pending further order of the Court."
(Pl. Mem. at 3 n.5.) That is false. Defendants' document requests were all limited to the alleged misstatements regarding warehouse financing and whether Plaintiffs had a good faith basis to bring their claim regarding
(continued...)

Plaintiffs to take non-party discovery concerning the single issue of Care's warehouse financing negotiations with Column and UBS at the time of the IPO. (Russello Decl. Exs. D-E.) Plaintiffs rejected that compromise offer and notified the non-parties that Plaintiffs were voluntarily adjourning the response dates for the subpoenas until Defendants' objections could be resolved by the Court.[2]

At the status conference held on December 4, 2009, the Court quashed the Subpoenas as beyond the scope of the Discovery Order. Plaintiffs now seek partial reconsideration of the Court's ruling to the extent it prohibits discovery from Column and UBS. The Motion should be denied.

Plaintiffs made a calculated decision to ignore the limitations imposed by the Discovery Order. Plaintiffs then made another calculated decision to reject Defendants' compromise proposal and take the issue to the Court. Plaintiffs do not deserve a third bite at the apple. Their attempt to go on a non-party fishing expedition should again be rejected.

## ARGUMENT

### 1. Plaintiffs Do Not Meet the Legal Standard for Reconsideration.

A motion for reconsideration will be denied unless the moving party can show "an intervening change of controlling law, the availability of new evidence, or the need to correct a

---

warehouse financing. Plaintiffs produced a total of 16 documents in response, most of which were publicly available SEC filings and analyst reports. With the single exception of Care's June 7, 2007 Prospectus, Plaintiffs' documents were all dated after the IPO, and most were dated after the filing of the complaint. Defendants believe that Plaintiffs' document production confirms that they had no good faith basis to bring their claims. Defendants reserve their rights and remedies against Plaintiffs and their counsel in this regard. Plaintiffs also falsely assert that "Defendants have stated time and time again that they will not assert a due diligence defense." (Pl. Mem. at 2 n.4.) Defendants raised a due diligence defense as their ninth affirmative defense in their Answer.

[2] Plaintiffs' assertion that none of the non-parties objected to the Subpoenas or moved to quash (Pl. Mem. at 4) is disingenuous. None of the non-parties objected or moved because Defendants, in the interest of efficiency, spared the Court of thirteen motions to quash by objecting to the Subpoenas as violating the Discovery Order. Plaintiffs then *voluntarily adjourned* the Subpoenas pending the outcome of the dispute.

clear error or prevent a manifest injustice." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (denying motion for reconsideration); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (affirming lower court's denial of motion for reconsideration and imposition of sanctions under Rule 11). Contrary to Plaintiffs' assertion that the Court should apply a "liberal standard" to the Motion (Pl. Mem. at 5), the cases cited by Plaintiffs state that "[t]he standard for reconsideration pursuant to Local Rule 6.3 is strict[.]" *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Kiobel v. Royal Dutch Petroleum Co.*, 02 Civ. 7618, 2009 U.S. Dist. LEXIS 106798, at *7 (S.D.N.Y. Nov. 16, 2009) ("The standard for a motion for reconsideration pursuant to Local Rule 6.3 is strict."). Indeed, courts view reconsideration of a prior ruling as an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Cobalt Multifamily Investors I, LLC v. Shapiro*, 06 Civ. 6468, 2009 U.S. Dist. LEXIS 111399, at *3 (S.D.N.Y. Nov. 30, 2009) (denying motion for reconsideration); *R.F.M.A.S., Inc. v. So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (same); *In re Health Mgmt. Sys. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (same). To this end, "Local Rule 6.3 must be 'narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court.'" *Ntsebeza v. Daimler AG (In re S. African Apartheid Litig.)*, 617 F. Supp. 2d 228, 298 (S.D.N.Y. 2009) (quoting *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003)); *see also Color Tile*, 322 F.3d at 167 ([W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."); *Virgin*, 956 F.2d at 1255 (same).

In the absence of a change in controlling law or new evidence, Plaintiffs must "point[] to

controlling decisions or data that the court overlooked," or "show[] that reconsideration is necessary in order to correct a clear error or prevent manifest injustice." *DGM Invs.*, 288 F. Supp. 2d at 523 (internal quotes and citations omitted). As discussed below, Plaintiffs cannot meet this standard. However, even if Plaintiffs were to meet the standard for reconsideration, their argument fails on the merits.

### 2. Defendants Have Standing To Enforce the Discovery Order.

Plaintiffs first argue that reconsideration is warranted because Defendants "do not have standing" to object to the Subpoenas. (Pl. Mem. at 6.) According to Plaintiffs, Defendants must demonstrate that they have "a privilege or privacy interest sufficient to give rise to legal standing to object to" the Subpoenas. (*Id.*) This argument is a non-starter.

The Court has discretion to deny discovery, including quashing non-party subpoenas, particularly when the requested discovery is in violation of a stipulated Court order. *Burrell v. AT&T Corp.*, 03 Civ. 2490, 2006 U.S. Dist. LEXIS 93393, at *28 (S.D.N.Y. Dec. 21, 2006) ("This Court has the inherent power not only to enforce its own rules and orders, but also to protect parties from discovery abuses."). Both the Discovery Order and the Court's quashing of the Subpoenas are within the Court's discretion to limit the scope of discovery, particularly to prevent Plaintiffs from engaging in a fishing expedition. *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amounts to nothing more than a 'fishing expedition' into actions or past wrongdoing not related to the alleged claims or defenses.").

In addition, even if Plaintiffs' argument could have any bearing on the Court's ruling, Defendants' objections to the Subpoenas are based on Defendants' interest in *enforcing the*

*Discovery Order*, which both parties stipulated to and the Court ordered. It is self-evident that Defendants have an interest in assuring that Plaintiffs adhere to their agreement and to the Court-imposed discovery limits.

Courts regularly disallow discovery requests that violate a prior ruling intended to limit discovery. *Arias-Zeballos v. Tan*, 06 Civ. 1268, 2007 U.S. Dist. LEXIS 5068, at *4-5 (S.D.N.Y. Jan. 24, 2007) (declining to enforce a subpoena requesting discovery of matters previously stricken from the complaint). In *Arias-Zeballos*, the plaintiff's subpoenas were "in tension with determinations made by the court." *Id.* at *4. The Court held that "[w]here, as here, the assigned district judge has stricken from the plaintiff's complaint references to a transaction(s) [. . .] because the matter is not relevant to the claims she has made in this action, subpoenas issued on behalf of the plaintiff seeking information concerning the transaction(s) are inappropriate." *Id.* at *4-5. This rule applies with even greater force to discovery limits not only ordered by the Court but stipulated to by the parties.

Indeed, a case cited on page six of Plaintiffs' brief underscores the futility of their argument. In *Langford v. Chrysler Motors Corp.*, the Second Circuit *upheld* the trial court's order quashing a subpoena where the records sought "had no relevance to the main issues in the case." 513 F.2d 1121, 1126 (2d Cir. 1975). The Second Circuit added that, even if the party opposing the subpoena technically lacked standing to challenge it, the trial court still may quash the subpoena based on lack of relevance. *Id. See also Syposs v. United States*, 181 F.R.D. 224, 228 (W.D.N.Y. 1998) ("Plaintiffs' reliance on *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir. 1975) is misplaced. While stating the general rule that a party lacks standing to quash a [non-party] subpoena, there the court upheld the trial court's order quashing such a subpoena on plaintiff's motion where the records sought had no relevance to the

main issues in the case."). Here, as in *Langford*, it is Defendants – as opposed to the non-parties from whom Plaintiffs concealed the Discovery Order – that are best situated and have the greatest incentive to assure that the Court-imposed discovery limit is enforced.

### 3.    It Would Not Be Manifestly Unjust To Deny the Motion.

Plaintiffs contend that quashing the Subpoenas would result in "manifest injustice" because discovery from Column and UBS is "relevant and necessary." (Pl. Mem. at 5, 8.) Although a motion for reconsideration may be granted to prevent manifest injustice, "the cases supporting this alternative standard emphasize that the rule should be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Williams v. New York City Dep't of Corr.*, 219 F.R.D. 78, 83 (S.D.N.Y. 2003) (denying motion for reconsideration of order dismissing plaintiffs' suit for failure to comply with discovery orders) (internal quotations and citations omitted). "In addition, most cases applying this standard have considered motions to amend the judgment after a jury trial." *Id.*

Plaintiffs fail to demonstrate "manifest injustice." The parties have already presented their arguments to the Court regarding the relevance of the discovery sought by the Subpoenas. Plaintiffs cannot use a motion for reconsideration "as a vehicle for relitigating issues already decided by the Court." *Torres v. Carry*, 08 Civ. 8967, 2009 U.S. Dist. LEXIS 105425, at *2-3 (S.D.N.Y. Oct. 29, 2009) (denying motion for reconsideration). "Courts have repeatedly been forced to warn counsel that such motions should not be made reflexively, to reargue those issues already considered when a party does not like the way the original motion was resolved." *Ntsebeza*, 617 F. Supp. 2d at 298 (internal quotations and citation omitted).

Even if the Court were to reconsider its ruling, the Court should reach the same result.

The Subpoenas served on Column and UBS seek plainly irrelevant information.[3] For example, these Subpoenas request "All documents concerning Care Investment's October 1, 2007 disclosure, in which it announced that it had obtained a Warehouse Facility from Column Financial." (Russello Decl. Ex. B, Request No. 6.) The October 1, 2007, disclosure does not relate to Defendants' negotiations to obtain warehouse financing at the time of the IPO on June 22, 2007. The Court has repeatedly ruled that events occurring after the IPO are not relevant to whether the alleged misstatements were misleading at the time of the IPO.

Similarly overbroad are the requests in the Subpoenas for "All documents sufficient to disclose communications with any of the underwriters of the IPO or their affiliates concerning Care Investment's efforts to secure a Warehouse Facility." (Russello Decl. Ex. B, Request No.8 and Ex. C, Request No. 7.) These requests are not limited to the warehouse financing negotiations with Column and UBS at the time of the IPO. Instead, the requests seek discovery of communications between Column and UBS and other non-parties regarding warehouse financing. And the request again is not limited to the time of the IPO.

Finally, although ostensibly seeking to renegotiate a compromise offer that they rejected, Plaintiffs still insist on "discovery of Column and UBS in accordance with the outstanding [non-party] subpoenas directed to each of them" (Pl. Mem. at 1), in violation of the limitations on scope in the Discovery Order. Plaintiffs thus are trying to have it both ways. In any event, Plaintiffs rejected Defendants' compromise offer and pressed the issue with the Court. They lost. Neither the rules nor the interests of justice entitle them to a mulligan.

---

[3] Plaintiffs incorrectly state that Defendants "bear the burden of demonstrating that [non-party] discovery is irrelevant." (Pl. Mem. at 8.) To the contrary, it is well established that "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Kingsway Fin. Servs. v. PricewaterhouseCoopers LLP*, 03 Civ. 5560, 2008 U.S. Dist. LEXIS 77018, at *13 (S.D.N.Y. Oct. 2, 2008) (collecting cases).

## CONCLUSION

Defendants plainly have standing to enforce the stipulated Discovery Order. The Subpoenas on Column and UBS seek information that goes beyond the scope of the Discovery Order. Plaintiffs had an opportunity to limit the scope of the Subpoenas and chose not to do so. Forcing them to live with the consequences of that decision is hardly a "manifest injustice." Defendants respectfully request that the Court deny Plaintiffs' Motion.

Dated: January 4, 2009

<div style="text-align:right">

McDERMOTT WILL & EMERY LLP

By: _____
Joel G. Chefitz
227 West Monroe Street
Chicago, IL 60606-5096
(312) 372-2000

Andrew B. Kratenstein
Kathryn C. Goyer
340 Madison Avenue
New York, NY 10173-1922
(212) 547-5400

*Attorneys for Defendants*
*Care Investment Trust Inc.*
*F. Scott Kellman, Robert O'Neill and*
*Flint D. Besecker*

</div>