UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
BRIARWOOD INVESTMENTS, INC., : Civil Action No. 1:07-cv-08159-LLS
Individually and On Behalf of All Others :
Similarly Situated, :
:
                Plaintiffs, :
:
  vs. :
:
CARE INVESTMENT TRUST INC., F. :
SCOTT KELLMAN, ROBERT O'NEILL and :
FLINT D. BESECKER, :
:
                Defendants. :
:
---------------------------------------x


REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF LEAD PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION
OF THE COURT'S DECEMBER 4, 2009 RULING

Lead Plaintiffs ("Plaintiffs") respectfully submit this reply memorandum of law in further support of their motion for partial reconsideration of the Court's December 4, 2009 ruling (the "Ruling"), insofar as the Ruling prohibits them from conducting third-party discovery of Column Financial Inc. ("Column") and UBS Real Estate Securities, LLC ("UBS"). As detailed herein, Defendants'[1] opposition to this motion supports the limited relief that Plaintiffs have requested.

**I.   PRELIMINARY STATEMENT**

In their opposition, Defendants admit that they "offered to permit Plaintiffs to take non-party discovery concerning the single issue of Care's warehouse financing negotiations with Column and UBS at the time of the IPO." *See* Memorandum of Law in Opposition to Lead Plaintiffs' Motion for Reconsideration, filed January 4, 2010 ("Def. Mem."), at 2-3. Having conceded that such discovery is relevant and appropriate here, the principal basis of their opposition – that the discovery sought is somehow irrelevant or beyond the scope of the August 5, 2009 Scheduling Order – is without merit. Moreover, the discovery that Plaintiffs seek is even ***narrower*** in scope than that which Defendants had agreed to "permit," because it is sought only from Column and UBS – the two potential sources of warehouse financing identified in the Final Prospectus – not Care's other underwriters. Further, Defendants now indicate that they will assert a "due diligence defense," which renders this (and conceivably other) third-party discovery relevant and necessary, as well.[2]

---

[1]   Unless otherwise noted, capitalized terms used herein have the meaning given to them in Plaintiffs' opening memorandum of law.

[2]   In contravention of their prior representations, Defendants now suggest that they may pursue a due diligence defense because they raised it in their Answer. *See* Def. Mem. at 1 n.1. As the Court will recall, Defendants had claimed they would demonstrate at the summary judgment stage that the Final Prospectus's statements about warehouse financing were, in fact, true. Indeed, this was a principal reason why Defendants had argued that third-party discovery was unnecessary.

In any event, Defendants never explain how they have standing to contest the scope of third-party discovery, because they never attempt to demonstrate the existence of a privilege or privacy right in any of the information sought here. In this respect, Defendants are correct that this issue is a "non-starter" – for ***them***. By the same token, Defendants' efforts to convert this motion into an examination of Plaintiffs' compliance with the August 5, 2009 Scheduling Order is nothing more than a red herring, designed to divert attention from the real issue on this motion: whether limited discovery of Column and UBS is appropriate, as Defendants had agreed that it is.

## II.   STATEMENT OF FACTS[3]

The facts at issue here are simple and straightforward: (i) Defendants agreed that "non-party discovery concerning the single issue of Care's warehouse financing negotiations with Column and UBS at the time of the IPO" is relevant (*see* Def. Mem. at 2-3); (ii) Plaintiffs seek such discovery ***only*** from Column and UBS, not from other third-parties; (iii) Column and UBS are in possession of documents that Defendants cannot possibly have (or claim that they do); (iv) Defendants failed to identify any privilege or privacy right that could confer standing upon them to object to the discovery sought; and (v) Defendants intend to assert a due diligence defense (*see id*. at 1 n.1). Moreover, the Ruling was made without the benefit of briefing or a record of the parties' communications relating to these matters. Further, this discovery is not prejudicial to Defendants.

---

[3]   Defendants continue to disregard the fact that the Scheduling Order does not permit them to conduct discovery of Plaintiffs (*see* Def. Mem. at 1 n.1), because any such discovery bears on class certification or other issues and must await later proceedings. In fact, Defendants admit that they sought this discovery to determine "whether Plaintiffs had a good faith basis to bring their claim regarding warehouse financing" (*see id*.) – a fishing expedition that could not possibly result in the disclosure of relevant information concerning the "single issue" of whether ***Defendants*** made accurate statements in the Final Prospectus about warehouse financing negotiations.

### III. ARGUMENT

#### A. Defendants Failed to Overcome their Lack of Standing

As even Defendants' cited authorities demonstrate, "[a] party to a suit does not have standing to contest subpoenas issued to third parties unless the party claims that the documents subpoenaed are privileged or confidential in some way." *Ashkinazi v. Sapir*, No. 02 CV 0002 (RCC), 2004 U.S. Dist. LEXIS 14523, at *9 (S.D.N.Y. Jul. 28, 2004); *see also Arias-Zeballos v. Tan*, No. 06 Civ. 1268, 2007 U.S. Dist. LEXIS 5068, at * (S.D.N.Y. Jan. 24, 2007) (quashing third-party subpoena only after finding that defendant had privacy interest in banking records sought by subpoena and thus had standing to object to it). In fact, in *Ashkinazi*, a magistrate judge quashed third-party subpoenas only ***after*** finding that the defendant had a personal privacy interest in the discovery sought and thus had standing to object. 2004 U.S. Dist. LEXIS 14523, at *2-*3. There, unlike here, the subpoenas sought "confidential and private information," such as "copies of the defendant's personal checks and documents concerning the purchase of residential real estate . . . ." *Id*. at *1.

Here, Defendants never even attempted to articulate any privilege or privacy interest in the third-party discovery sought from Column and UBS. Rather, in disregard of their lack of standing, they argue that the Court can "deny" this discovery because, they claim, it somehow violates "a stipulated Court Order." *See* Def. Mem. at 4. But Defendants have made no such showing.[4] Moreover, while it is true that the Court has broad discretion to regulate discovery, Defendants'

---

[4] In fact, Plaintiffs believe that Defendants have had improper communications with the subpoenaed third-parties, by effectively coaching them not to respond. *See In re Seagate Tech. II. Sec. Litig.*, No. C-89-2493(A)-VRW, 1993 U.S. Dist. LEXIS 18065, at *4-*5 (N.D. Cal. June 15, 1993) ("[T]he Court hereby admonishes [the defendant] to refrain from interfering with third-party discovery by coaching [the third-parties] to object to the subpoenas or falsely representing to them the relevant time period for discovery. Such behavior is inappropriate . . . ."). Plaintiffs continue to reserve their right to address these improprieties at the appropriate time.

belief that they are "best situated and have the greatest incentive" to serve as a discovery watchdog is simply not determinative of whether they have standing to contest the discovery sought here. And, it is not up to Defendants to decide whether Column and UBS – sophisticated entities, represented by counsel – should comply with Plaintiffs' discovery requests. In fact, Plaintiffs were in the process of negotiating with Column and UBS for the voluntary production of the information sought.

Contrary to their assertions, *Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975), a decision that Plaintiffs cited, does not support Defendants' position.[5] It is true, as Defendants note, that the court upheld a district court's decision to quash a non-party subpoena. In that case, however, the defendant subpoenaed the employer of plaintiff's expert witness, who was subjected to extensive examination at trial designed to attack his credibility. *See id.* at 1126 (noting that that the defendant "went to great lengths to attack the credibility of [the] expert witness" at trial). As the court recognized, the "motion to quash . . . arose after an extensive inquiry into the qualifications of plaintiff's witness. In this context, it appears that plaintiff was objecting not only to the production of these records **but also to the continued attack upon his witness**." *See id.* at 1125 (emphasis added). Thus, the district court "had permitted defense counsel ample opportunity to attack the witness's qualifications" and "whatever additional information these unrelated materials might have provided would not have affected the substantial rights of the defendant." *Id.* at 1126 (citing Fed. R. Civ. P. 61, which excuses harmless error). Accordingly, in the unusual (and narrow) circumstances of that case, the court upheld the district court's decision to quash the subpoena.

---

[5] Defendants' reliance on *Syposs v. United States*, 181 F.R.D. 224 (W.D.N.Y. 1998), is also misplaced. There, a magistrate judge held that a third-party witness – an employee of the defendant – had a privacy interest in his "cell phone communications." *Id.* at 228. Thus, the court's analysis of *Langford* is *dicta*, because standing existed regardless of whether the records at issue were relevant. *See id.* In any event, the court concluded that the discovery sought was indeed relevant. *Id.* at 229.

Also of little relevance here is *Burrell v. AT&T Corp.*, No. 03 Civ. 2490, 2006 U.S. Dist. LEXIS 93393, at *27-*28 (S.D.N.Y. Dec. 21, 2006), a case, cited by Defendants, involving repeated discovery abuses that, after four express warnings about noncompliance, resulted in the severe sanction of dismissal.[6]  Indeed, at issue there was a plaintiff's repeated misrepresentation of facts and refusal to produce discovery. *See id*.  The Court, however, never quashed any subpoenas.  Instead, defendants there had ***received*** responses to their subpoenas, which uncovered relevant discovery material that exposed plaintiff's abuses.  *Id*. at *18 ("Defendants subsequently received responses to subpoenas that were served upon plaintiff's known employers, and learned that plaintiff had concealed extensive earnings information.").

Needless to say, the circumstances here are not anything like those in *Langford* or *Burrell*, and Defendants cannot circumvent their lack of standing by arguing otherwise.

### B.    The Discovery Sought from Column and UBS is Material and Relevant

Also without merit is Defendants' claim that the discovery sought from Column and UBS – the two underwriters mentioned by name in the Final Prospectus as sources of warehouse financing – is irrelevant or beyond the scope of the Scheduling Order.  As Defendants must concede, a central issue in this case is whether facts exist that undermine the Final Prospectus's representations that Care would secure a warehouse facility from Column or UBS "shortly after" or "soon after" the IPO.  This issue, standing alone, is sufficient to establish the relevancy of the third-party discovery sought, because Column and UBS are likely in possession of information, not shared with Care, concerning

---

[6]    Defendants' reliance on *Collens v. City of New York*, 222 F.R.D. 249 (S.D.N.Y. 2004), is also misplaced.  In that case, the court refused to permit discovery of the home address of a police officer who had allegedly "violated the plaintiff's constitutional rights by wrongfully issuing him a summons."  *See id*. at 251.  Thus, the information sought was "particularly personal information" and, in any event, was protected by "the official information privilege."  *Id*. at 254-55.

Care's alleged efforts and ability to secure warehouse financing from them. That these third-parties would have relevant information is understandable, and, indeed, expected; that Defendants would oppose discovery of this information, which they cannot possibly have, is not.[7]

Moreover, aside from the other reasons explained in Plaintiffs' opening memorandum of law, Defendants have only now suggested that they may assert a due diligence defense (*see* Def. Mem. at 1 n.1) – a defense that they had consistently represented they would not pursue. In fact, they had argued that third-party discovery of the underwriters was unnecessary precisely **because** they would not pursue this defense (and hence the adequacy of their due diligence would not be at issue). With Defendants' eleventh-hour change of heart, however, the viability of their purported due diligence is very much at issue – as is the information within Column's and UBS's possession about it.[8]

### C. Manifest Injustice Will Result from a Denial of the Discovery Sought

In essence, Defendants' argument as to why manifest injustice will not result from a denial of the limited third-party discovery sought boils down to their belief that Plaintiffs want a "mulligan." *See* Def. Mem. at 7. But manifest injustice, much like relevance, does not hinge on a defendant's subjective beliefs.

---

[7]     Because the information sought here is at least potentially relevant, Defendants bear the burden of establishing that discovery is inappropriate. *See Condit v. Dunne*, 225 F.R.D. 100, 106 (S.D.N.Y. 2004) ("Once any possibility of relevance sufficient to warrant discovery is shown, the burden shifts to the party opposing discovery to show the discovery is improper.") (citation and internal quotation marks omitted); *accord Kingsway Fin. Servs. v. PricewaterhouseCoopers LLP*, No. 03 Civ. 5560, 2009 U.S. Dist. LEXIS 77018, at *14 (S.D.N.Y. Oct. 2, 2008) ("Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome.") (cited by Defendants).

[8]     It is for this reason that the Court should preclude Defendants from asserting a due diligence defense if it adheres to its Ruling and forecloses third-party discovery here. Indeed, having taken the position that they would not pursue a due diligence defense in procuring the Ruling, Defendants may not now reverse course and abandon that position merely because it suits their purposes to do so.

Moreover, the parties never briefed the issue of whether discovery of Column and UBS is relevant, nor did they present the Court with a sufficient factual record to decide the issue. As such, the Court did not have an opportunity to consider Defendants' concession that third-party discovery of Care's efforts to secure a warehouse facility from Column or UBS is indeed relevant.[9] Far from a "compromise offer" (as they now portray), Defendants consistently took this position and only abandoned it when they saw an opportunity to foreclose third-party discovery. Notwithstanding their last-minute reversal, Defendants' repeated admissions demonstrate that even they appreciate that precluding the narrow discovery sought here will prejudice Plaintiffs and result in the suppression of relevant information.

Further, entirely absent from Defendants' opposition is even a scintilla of evidence that they will suffer prejudice as a result of the discovery that Plaintiffs seek from Column and UBS, which makes their criticism of the breadth of the discovery sought here all the more peculiar. In fact, precisely the opposite is true: Plaintiffs will suffer severe prejudice without discovery from Column and UBS, each of whom maintains unique documents that Defendants cannot even claim to possess. In contrast, Defendants stand to benefit from the preclusion of third-party discovery, by forcing Plaintiffs to brief and argue a motion for summary judgment based on a factual record devoid of evidence from the two underwriters that Care identified by name in the Final Prospectus as expected sources of warehouse financing. Under the circumstances, the wholesale denial of third-party discovery could not be more manifestly unjust.

---

[9] While Defendants pejoratively describe this motion as a "third bite at the apple" (*see* Def. Mem. at 2), they ignore the fact that the motion represents Plaintiffs' first opportunity to brief these issues and present the Court with Defendants' admissions. As Plaintiffs have pointed out, not a single third-party sought judicial intervention concerning the propriety of the discovery at issue, nor did Defendants move this or any other court to preclude such discovery.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider its Ruling and, in doing so, permit third-party discovery of Column and UBS.

DATED:  January 14, 2010

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
JOSEPH RUSSELLO


              /s/ *Joseph Russello*
JOSEPH RUSSELLO

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

LABATON SUCHAROW LLP
JONATHAN GARDNER
PAUL J. SCARLATO
CAROL C. VILLEGAS
140 Broadway, 34th Floor
New York, NY  10005
Telephone:  212/907-0700
212/818-0477 (fax)

*Co-Lead Counsel for Lead Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants in this action.

*s/ Joseph Russello*
JOSEPH RUSSELLO

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
E-mail:JRUSSELLO@csgrr.com