UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
BRIARWOOD INVESTMENTS, INC., Individually and :
On Behalf of All Others Similarly Situated,

        Plaintiff,

vs.                                                    Civil Action No. 1:07-cv-08159-LLS

CARE INVESTMENT TRUST INC., F. SCOTT
KELLMAN, ROBERT O'NEILL and FLINT D.
BESECKER,

        Defendants.
------------------------------------------------------------ x

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO LEAD
PLAINTIFFS' MOTION TO EXTEND THE FEBRUARY 26, 2010
END DATE OF FACT DISCOVERY AND THE DATES SET FORTH
IN THE DECEMBER 4, 2009 ORDER**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ................................................................................................................................ 2

1. Lead Plaintiffs Have Not Demonstrated "Good Cause" To Extend Fact Discovery ................ 2

2. Lead Plaintiffs' Cases Are Inapposite ........................................................................................ 7

CONCLUSION ............................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ace Ltd. v. CIGNA Corp.*,
   No. 00 CV. 9423, 2001 U.S. Dist. LEXIS 19090 (S.D.N.Y. Nov. 20, 2001).................8

*Elliot Assocs., L.P. v. Republic of Peru*,
   No. 96 Civ. 7917, 1997 U.S. Dist. LEXIS 11185 (S.D.N.Y. July 30, 1997).................8

*Eng-Hatcher v. Sprint Nextel Corp.*,
   No. 07 Civ. 7350, 2008 U.S. Dist. LEXIS 67052 (S.D.N.Y Aug. 28, 2008).................2, 3

*Gray-Williams v. TWA*,
   No. 96 Civ. 6289, 1997 U.S. Dist. LEXIS 17315 (S.D.N.Y. Nov. 3, 1997).................8

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d. Cir. 2003).................2

*Hnot v. Willis Group Holdings Ltd.*,
   No. 01 Civ. 6558, 2006 U.S. Dist. LEXIS 57612 (S.D.N.Y. Aug. 17, 2006).................6, 7

*McKay v. Triborough Bridge & Tunnel Auth.*,
   No. 05 Civ. 8936, 2007 U.S. Dist. LEXIS 81722 (S.D.N.Y. Nov. 2, 2007).................3, 5, 6

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ace Ltd. v. CIGNA Corp.*,
   No. 00 CV. 9423, 2001 U.S. Dist. LEXIS 19090 (S.D.N.Y. Nov. 20, 2001).................8

*Elliot Assocs., L.P. v. Republic of Peru*,
   No. 96 Civ. 7917, 1997 U.S. Dist. LEXIS 11185 (S.D.N.Y. July 30, 1997).................8

*Eng-Hatcher v. Sprint Nextel Corp.*,
   No. 07 Civ. 7350, 2008 U.S. Dist. LEXIS 67052 (S.D.N.Y Aug. 28, 2008).................2, 3

*Gray-Williams v. TWA*,
   No. 96 Civ. 6289, 1997 U.S. Dist. LEXIS 17315 (S.D.N.Y. Nov. 3, 1997).................8

*Grochowski v. Phoenix Constr.*,
   318 F.3d 80 (2d. Cir. 2003).................2

*Hnot v. Willis Group Holdings Ltd.*,
   No. 01 Civ. 6558, 2006 U.S. Dist. LEXIS 57612 (S.D.N.Y. Aug. 17, 2006).................6, 7

*McKay v. Triborough Bridge & Tunnel Auth.*,
   No. 05 Civ. 8936, 2007 U.S. Dist. LEXIS 81722 (S.D.N.Y. Nov. 2, 2007).................3, 5, 6

## INTRODUCTION

On August 5, 2009, the Court entered a Stipulation and Order of Dismissal and Scheduling (Scheduling Order), limiting discovery in this case to "the single issue of the alleged false and misleading statements regarding warehouse financing." (Scheduling Order ¶ 2.) The Court gave the parties over six months (until February 26, 2010) to complete fact discovery on this "single issue" – ample time. (*Id.* ¶¶ 3-6.)

The Court held a status conference on December 4, 2009 and, three days later, the Court entered an order directing the parties to file an abbreviated joint pre-trial order with the Court by April 7, 2010 (December 7 Order). The December 7 Order further states that the schedule would not be extended "except upon a showing of good cause not foreseeable at the date of this order."

Now, notwithstanding a series of calculated decisions that *Lead Plaintiffs made*, they assert that the Court and Defendants have prevented Lead Plaintiffs from completing fact discovery before the discovery cut-off. They seek an extension of the fact discovery and pre-trial order deadlines by approximately two months based on a hypothetical. They assert that two non-parties – Column Financial Inc. (Column) and UBS Real Estate Securities, LLC (UBS) – "cannot complete their document productions" by the current close of fact discovery. (Russello Decl. ¶ 7.) Lead Plaintiffs claim that the documents that Column (an affiliate of Credit Suisse) and UBS produce "*may* reveal additional information concerning Care's efforts to secure warehouse financing from them." (*Id.* ¶ 14) (emphasis added). If so, Lead Plaintiffs "*may* need to recall certain witnesses they have already deposed" and "*may* also need to depose representatives of Column and UBS." (*Id.*) (emphasis added).

The motion should be denied. As discussed below and in greater detail in the accompanying Declaration of Andrew B. Kratenstein (Kratenstein Decl.), Lead Plaintiffs put themselves in their current predicament because of *their own* strategic decisions and lack of

- 1 -

diligence. They waited almost three months – nearly halfway through the discovery period – to serve overbroad subpoenas on Column, UBS and various underwriters of Care's initial public offering (the "Subpoenas"). They voluntarily adjourned the Subpoenas after Defendants challenged the Subpoenas' scope. They waited until the last few weeks of fact discovery to take depositions of Defendants' witnesses. Yet they never sought depositions of any Column or UBS representatives – even though Defendants identified in their initial disclosures at the beginning of discovery the bankers involved in the warehouse financing negotiations and timely produced a trove of documents detailing the status of the warehouse financing negotiations.

Having placed their backs squarely against the wall – and in violation of this Court's Individual Practices, which state that "a pre-motion conference with the court is required before making any motion" – Lead Plaintiffs moved to extend the fact discovery period just three days before it was set to expire. The purpose of their motion is clear: forestall summary judgment against them and impose additional expense on Defendants. Lead Plaintiffs have not demonstrated "good cause" to extend the discovery period at all, let alone by the two months they seek. This case can and should be brought to an expeditious conclusion.

## ARGUMENT

**1.  Lead Plaintiffs Have Not Demonstrated "Good Cause" To Extend Fact Discovery.**

The December 7 Order states that the schedule will not be extended "except upon a showing of good cause not foreseeable at the date of this order." (Kratenstein Decl. Ex. M.) Similarly, Rule 16(b) of the Federal Rules of Civil Procedure states that a scheduling order "may be modified only for good cause." "A finding of good cause depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d. Cir. 2003). Lead Plaintiffs must demonstrate that "despite [their] diligent efforts, the [fact discovery] schedule could not have reasonably been met." *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350, 2008 U.S.

Dist. LEXIS 67052, at *3-4 (S.D.N.Y Aug. 28, 2008); *see also McKay v. Triborough Bridge & Tunnel Auth.*, No. 05 Civ. 8936, 2007 U.S. Dist. LEXIS 81722, at *3 (S.D.N.Y. Nov. 2, 2007) (same).

Lead Plaintiffs cannot meet their burden. The Court issued the Scheduling Order on August 5, 2009. Lead Plaintiffs then inexplicably waited *until October 22, 2009* – nearly half-way through the discovery period – before serving the Subpoenas. (Kratenstein Decl. ¶ 8, Exs. D-E.) Defendants quickly objected to the Subpoenas as beyond the scope of discovery stated in the Scheduling Order "except to the extent [the Subpoenas] seek documents specifically regarding Care's negotiations to obtain warehouse financing from UBS or Column Financial at the time of the IPO." (Kratenstein Decl. ¶ 10, Ex. F.)

Lead Plaintiffs refused to withdraw or narrow the Subpoenas. (Kratenstein Decl. ¶ 11, Ex. G.) Instead, Lead Plaintiffs *voluntarily* adjourned all of the Subpoenas pending their review of Defendants' document production. (Kratenstein Decl. ¶ 12, Ex. H.) Defendants had no objection to Lead Plaintiffs' adjournment of the Subpoenas but explicitly reserved Defendants' right to oppose any request by Lead Plaintiffs to extend the discovery schedule. (Kratenstein Decl. ¶ 13, Ex. I.)

In November 2009, Defendants made their document production to Lead Plaintiffs, which consists of approximately 2,900 documents totaling approximately 33,000 pages. (Kratenstein Decl. ¶ 14.) Those documents, which contain numerous communications concerning the status of Defendants' negotiations with Column and UBS, confirm that (a) Defendants were actively negotiating a warehouse facility with affiliates of Column and UBS as of the date of the IPO and (b) Defendants expected, based on the communications with

Column and UBS, that those facilities would close soon after the consummation of the IPO. (Kratenstein Decl. ¶¶ 15-20, Exs. J-L.)

After receiving the documents that proved the falsity of Lead Plaintiffs' allegations, Lead Plaintiffs sought to broaden their fishing expedition in the hope of catching something. At a Court conference on December 4, 2009, Lead Plaintiffs challenged the scope of discovery that Defendants had proposed two months earlier at the end of October. (Kratenstein Decl. ¶ 22.) The Court held that Lead Plaintiffs' Subpoenas were, in fact, overbroad. (*Id.*) The Court nevertheless permitted Lead Plaintiffs to ask the underwriters two questions: "(1) In your due diligence, did you discover that Care was having difficulty obtaining funds from UBS or Column; and (2) If so, describe it." (Memorandum Endorsement, dated February 11, 2010, at 1.) Lead Plaintiffs have *declined to ask* these questions to any underwriter. (Kratenstein Decl. ¶ 23.)

Lead Plaintiffs then waited another two weeks after the December 4 conference (until December 18, 2009) to file a motion for partial reconsideration of the Court's December 4 ruling as it applied to Column and UBS. (Docket Number 61.) Lead Plaintiffs chose not to expedite briefing or consideration of that motion. (Kratenstein Decl. ¶ 25.)

In an attempt to deflect blame for their own strategic missteps and lack of diligence, Lead Plaintiffs now claim that Defendants improperly advised Column and UBS that the Subpoenas served on them had been "quashed." (Russello Decl. ¶ 6.) Yet Lead Plaintiffs admit that, with the exception of the two questions that the Court permitted Lead Plaintiffs to ask the underwriters, *Lead Plaintiffs themselves* believed that the Court's December 4 ruling had "prohibited formal third party discovery" (which is why they made their motion to reconsider).[1]

---

[1] Of course, Lead Plaintiffs never bothered telling Column or UBS of the Court's December 4 ruling.

(*Id.* ¶ 4.) Lead Plaintiffs also neglect to mention that they had *voluntarily* adjourned the Subpoenas on Column and UBS and had been warned that Defendants might not agree to a discovery extension if Lead Plaintiffs later elected to pursue the Subpoenas. (Kratenstein Decl. ¶ 12, Ex. H.)

In fact, to this day, Lead Plaintiffs have *never sought* the deposition of a single Column or UBS witness. (Kratenstein Decl. ¶ 9.) They did not seek such depositions after both parties served their initial disclosures on August 28, 2009, which listed numerous Column/Credit Suisse and UBS representatives who were involved in the warehouse financing negotiations. (Kratenstein Decl. ¶¶ 6-7, Exs. B-C.) Nor did Lead Plaintiffs seek depositions of Column/Credit Suisse or UBS witnesses after Defendants produced their documents in November 2009, which contained extensive e-mails and other communications with both banks refuting Lead Plaintiff's allegations. (Kratenstein Decl. ¶¶ 14-21.)

Lead Plaintiffs then waited until February 2009 – the last month of the fact discovery period – to take the depositions of Defendants' witnesses. (Kratenstein Decl. ¶ 26, Ex. N.) Each witness testified that he or she expected that the warehouse facilities would close soon after consummation of the IPO based largely on interactions and communications with Column and UBS representatives. (Kratenstein Decl. ¶¶ 28-36, Exs. O-T.) Yet Lead Plaintiffs still sat on their hands and failed to subpoena a single Column or UBS witness for a deposition. (Kratenstein Decl. ¶ 37.)

This case is thus very similar to *McKay*. There, Judge Sullivan held that the defendants had not demonstrated good cause to reopen discovery after a court-ordered mediation because "Defendants do not contend that any new information has come to light since the mediation; they merely state that they 'realized' at the mediation that they were not in possession of certain

documents, and speculate that those documents, if they exist, 'could be relevant' to the issue of the reasonableness of Plaintiff's actions." 2007 U.S. Dist. LEXIS 81722, at *6-7. The court concluded that because defendants "have not shown why they could not have come to this conclusion and sought the subpoena prior to the close of discovery, it cannot be said that Defendants were sufficiently 'diligent' in conducting discovery so as to justify reopening discovery." *Id.* at *7.

Likewise, Lead Plaintiffs "do not contend that any new information has come to light" with regard to the warehouse financing negotiations. *McKay*, 2007 U.S. Dist. LEXIS 81722 at *6-7. Lead Plaintiffs merely speculate that documents produced by Column and UBS "*may* reveal additional information concerning Care's efforts to secure warehouse financing from them." (Russello Decl. ¶ 14) (emphasis added). If so, Lead Plaintiffs "*may* need to recall certain witnesses they have already deposed" and "*may* also need to depose representatives of Column and UBS." (*Id.*) (emphasis added).

Yet it was Lead Plaintiffs who: (1) waited nearly three months after entry of the Scheduling Order to subpoena Column and UBS; (2) issued overbroad Subpoenas and voluntarily adjourned them when Defendants predictably objected to the Subpoenas' scope; and (3) declined to subpoena Column or UBS witnesses for depositions after they were identified in *both parties'* initial disclosures, in Defendants' document production, and during depositions of Defendants' witnesses. Thus, it was completely foreseeable to Lead Plaintiffs when both the Scheduling Order and the December 7 Order was entered that, if Lead Plaintiffs did not expeditiously obtain discovery from Column and UBS, Lead Plaintiffs may run out of time.

The case of *Hnot v. Willis Group Holdings Ltd.*, No. 01 Civ. 6558, 2006 U.S. Dist. LEXIS 57612 (S.D.N.Y. Aug. 17, 2006), is also directly on point. There, the plaintiffs

contended that they did not complete certain discovery before the discovery cut-off date because they were acting according to court orders received at an off-the-record conference allegedly barring the plaintiffs from pursuing the discovery at issue. 2006 U.S. Dist. LEXIS 57612, at *10. The court reasoned that "regardless of what transpired at the [off-the-record conference], plaintiffs subsequently failed to take even minimally adequate steps to protect their alleged right to the discovery now at issue" and concluded that there was not "anything remotely unreasonable or unjust in holding plaintiffs to major deadlines in a case management plan to which [plaintiffs] themselves consented." *Id.* at *12, 16.

Here, despite any confusion about the Court's December 4 ruling, Lead Plaintiffs failed to take "minimally adequate steps to protect their alleged right to the discovery now at issue." *Id.* at *12. As discussed above, Lead Plaintiffs inexplicably delayed in serving the Subpoenas. Lead Plaintiffs then chose to adjourn their Subpoenas, waited months before seeking an adjudication of the scope of the Subpoenas, waited another two weeks before filing their motion for partial reconsideration of that ruling, did not move for or otherwise seek expedited treatment for that motion, waited until the end of fact discovery to depose Defendants' witnesses, and decided not to depose Column and UBS representatives.

Those decisions were not made by the Court or by the Defendants. They were made by the Lead Plaintiffs. Now Lead Plaintiffs should have to live with the foreseeable consequences of their decisions.

### 2. Lead Plaintiffs' Cases Are Inapposite.

None of the cases cited by Lead Plaintiffs supports their position that discovery should be extended. Rather, in each case, the party seeking the extension was able to demonstrate that the other party's delays in responding to discovery requests justified extending the discovery period.

Here, by contrast, Lead Plaintiffs are seeking an extension based on *their own* delays and other ill-conceived decisions.

For example, in *Gray-Williams v. TWA,* No. 96 Civ. 6289, 1997 U.S. Dist. LEXIS 17315, at *1-2 (S.D.N.Y. Nov. 3, 1997), the court granted a two-month extension of discovery because: the plaintiff took seven months to answer defendant's interrogatories; plaintiff's answers were inadequate; plaintiff did not provide supplemental answers when requested; and her attorney promised to produce her medical records, but never did. 1997 U.S. Dist. LEXIS 17315, at *1-2.

Similarly, in *Elliot Associates, L.P. v. Republic of Peru,* No. 96 Civ. 7917, 1997 U.S. Dist. LEXIS 11185, at *4, 8-9 (S.D.N.Y. July 30, 1997), the court extended the discovery deadline by thirty days because some documents requested by the defendants were not disclosed prior to depositions of certain witnesses, and an individual designated by the plaintiff for deposition testified at his deposition that there were three other individuals who had greater knowledge of the issue being litigated than he did.

Finally, in *ACE Ltd. v. CIGNA Corp.,* No. 00 Civ. 9423, 2001 U.S. Dist. LEXIS 19090, at *4-5 (S.D.N.Y. Nov. 20, 2001), the court granted the defendant's motion for extension of discovery because the defendant was awaiting the production of a substantial number of documents, and the defendant "may well have difficulties in discovering whom it needs to depose, what questions or issues need to be explored through deposition or interrogatories, and facts relevant to defending various depositions without first reviewing such materials." The court concluded that "the delay in document production . . . has resulted in the very real possibility that [the defendant] will be unable to *meaningfully* complete its fact discovery by the current fact discovery cut-off date." *Id.* at *5 (emphasis added).

By contrast, Defendants have diligently responded to Lead Plaintiffs' discovery requests, and Lead Plaintiffs have had every opportunity to "meaningfully" complete discovery. Defendants have produced approximately 2,900 documents totaling approximately 33,000 pages, including numerous communications with Column and UBS representatives. (Kratenstein Decl. ¶¶ 14-20, Exs. J-L.) Lead Plaintiffs took the depositions of six defense witnesses and questioned them extensively about these communications and documents. Lead Plaintiffs thus clearly were not deprived of "meaningful" discovery by the Defendants or by the Court.

## CONCLUSION

Lead Plaintiffs have failed to meet their burden of demonstrating "good cause not foreseeable at the date of" the Scheduling Order or the December 7 Order to extend the fact discovery period. Lead Plaintiffs only have themselves to blame for failing to obtain discovery from Column and UBS in a timely manner. Accordingly, Defendants respectfully request that the Court deny Lead Plaintiffs' motion to extend discovery.

Dated: March 3, 2010

McDERMOTT WILL & EMERY LLP

By: _____
Joel G. Chefitz
227 West Monroe Street
Chicago, IL 60606-5096
(312) 372-2000

Andrew B. Kratenstein
Kathryn C. Goyer
340 Madison Avenue
New York, NY 10173-1922
(212) 547-5400

*Attorneys for Defendants
Care Investment Trust Inc.
F. Scott Kellman, Robert O'Neill and
Flint D. Besecker*